455 F.2d 818
 4 Fair Empl.Prac.Cas. 269, 4 Empl. Prac. Dec. P 7629
James D. HODGSON, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BROWARD
COUNTY, FLORIDA, Defendant-Appellee.
 No. 71-1718.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 25, 1972.
 
 Peter G. Nash, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., James H. Woodson, Atty., U. S. Dept. of Labor, Atlanta, Ga., Bessie Margolin, Carin Ann Clauss, Helen W. Judd, Attys., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.
 Marshall G. Curran, Jr., James Blosser, English, McCaughan & O'Bryan, Fort Lauderdale, Fla., for defendant-appellee.
 Before TUTTLE, GEWIN and DYER, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 On this appeal we are called upon to apply the recently enacted Age Discrimination In Employment Act.[1] This action was brought by the Secretary of Labor to enjoin defendant from denying employment to individuals within the age group protected by the Act and from withholding payment for unpaid wages allegedly due one individual because of discrimination against her. The trial court held that some of defendant's past conduct was violative of the law and warranted the issuance of a limited injunction restraining defendant from future violations of the Act, but it denied recovery of back wages. The Secretary appeals. We reverse as to the denial of unpaid wages and conclude that the injunction must be broadened.
 
 BACKGROUND
 
 2
 The Age Discrimination in Employment Act was enacted in 1967 for the express purposes of promoting "employment of older persons based on their ability rather than age" and prohibiting "arbitrary age discrimination."[2] The Act makes it unlawful for employers, employment agencies, and labor organizations to discriminate on the basis of age, the protected group being those persons between the ages of forty and sixtyfive.[3] With a few minor exceptions the prohibitions of this enactment are in terms identical to those of Title VII of the Civil Rights Act of 1964[4] except that "age" has been substituted for "race, color, religion, sex, or national origin."
 
 
 3
 The statutory defenses to an action for violation of the Act are contained in Section 4(f).[5] That section provides, inter alia, that it shall not be unlawful for an "employer, employment agency, or labor organization to take any action otherwise prohibited . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age."
 
 
 4
 Additionally it is to be noted that the Age Discrimination Act incorporates by reference the enforcement provisions of the Fair Labor Standards Act.[6] Thus, should the Secretary of Labor fail to "effect voluntary compliance with the requirements (of the Act) through informal methods of conciliation, conference, and persuasion",[7] the courts have at their disposal a broad range of remedies (except criminal sanctions). These, of course, include the issuance of injunctions to effectuate future compliance with the Act and to restrain the continued withholding of unpaid wages owing because of unlawful past discrimination. Amounts owing to a person as a result of a violation of the Age Discrimination Act are deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of Sections 16 and 17, of the Fair Labor Standards Act.[8]
 
 
 5
 The Secretary brought this action under Section 7(b) of the Age Discrimination Act and Section 17 of the Fair Labor Standards Act to enjoin defendant, First Federal Savings and Loan Association of Broward County, Florida, from violating the provisions of Section 4(a) (1)[9] by denying employment to job applicants within the protected age group. He further sought to restrain the defendant from withholding unpaid wages owing to a Mrs. Betty Hall as a result of defendant's unlawful refusal to hire her because of her age.
 
 
 6
 At the conclusion of the trial the district court found that defendant had for a limited period of time followed the practice of not hiring tellers within the protected age group and based on that finding it issued an injunction restraining defendant from future violations of Section 4 of the Age Discrimination Act "with regard to the hiring of tellers". The court added that the injunction was not to be construed as prohibiting defendant from refusing to hire tellers within the protected age group who "for whatever reason may not have the necessary qualifications to perform the job of a teller." With respect to the alleged discrimination against Mrs. Hall the court held that the Secretary had not carried the burden of proof to sustain such a charge; accordingly relief was denied.
 
 
 7
 The Secretary now appeals. He contends that it was an abuse of discretion for the trial court to limit the applicability of its injunction to the hiring of tellers only; that the clarifying statement to the injunction should be omitted inasmuch as it would permit easy evasion of the Act; and that it was error to deny relief to Mrs. Hall. We consider each of the Secretary's contentions below.
 
 FACTS
 
 8
 Defendant-appellee (hereafter Defendant) is a savings and loan institution with a main office and five branches in Broward County, Florida. It has been stipulated that defendant is an "employer" within the meaning of the Act.
 
 
 9
 At any given time defendant normally employs about thirty-five tellers, a job which according to testimony, has a relatively high turnover rate. The record shows that between June 12, 1968 (the effective date of the Act) and July 14, 1969, 35 tellers and teller trainees were hired. None was over forty and all but three were in their teens and twenties.
 
 
 10
 On April 25, 1969, Mrs. Betty Hall, then 47 years of age, applied for a position at defendant institution and was interviewed there by Mr. Joseph Bunsfield, the personnel officer. Since defendant at that time had openings for tellers, Mr. Bunsfield brought up the subject of the teller jobs during the interview. However, he informed Mrs. Hall that the job requires long hours of standing and that, in his opinion, she would be physically incapable of doing the work. At the termination of the interview Mr. Bunsfield wrote "too old for teller" on his notes pertaining to Mrs. Hall. Mrs. Hall was nonetheless given an application form which she filled out (without specifying what position she was seeking) and returned to the defendant. Defendant did not hire her.
 
 
 11
 Shortly thereafter, in June, 1969, Mr. Bunsfield interviewed another applicant, a Mrs. Belle Noland, who, like Mrs. Hall, was over forty years of age. With respect to this woman Mr. Bunsfield wrote "wants teller, too old."
 
 
 12
 Subsequently, in the course of a wagehour investigation conducted on July 24, 1969, Mr. Bunsfield, when queried by the Labor Department compliance officer about the notations on his interview notes, responded that he had not meant to write "too old", but had meant instead that Mrs. Hall and Mrs. Noland were too heavy and had thick legs.[10] However, at trial Mr. Bunsfield testified that he does not normally look for physical characteristics in determining whether to hire a particular applicant for the job of teller. Moreover, on the interview notes of another female applicant, age 25, Mr. Bunsfield had written "heavy girl, may make teller." This young woman was five feet five inches tall and weighed 160 pounds.
 
 
 13
 Two other circumstances ought to be noted at this point. First, from December 3, 1968 an employment agency in Fort Lauderdale, Florida, Sigma Personnel Consultants, maintained in its current files a job order for teller trainees, ostensibly placed by the defendant. The order called for females of moderate intelligence, with or without cashiering experience, and specifying ages 21 to 24.[11] Second, Mr. Bunsfield admitted that he was familiar with the requirements of the Age Discrimination Act prior to Mrs. Hall's application for a job. Shortly before Mrs. Hall applied, defendant received a notification from the Labor Department, advising that defendant's blind ad in a local newspaper seeking a "young man" for the position of financial advertising assistant might constitute a violation of the Act. Mr. Bunsfield was aware of this correspondence, but he testified that the ad had been run, without his knowledge, by defendant's public relations department.
 
 RECOVERY OF BACK WAGES
 
 14
 We consider first the Secretary's contention that Mrs. Hall is entitled to recover from the defendant lost wages resulting from the alleged discrimination against her. The trial court denied such relief on the ground that the Secretary failed to meet his burden of proof. We reverse.
 
 
 15
 In its pleadings the defendant asserted, by way of affirmative defense, that it had failed to hire Mrs. Hall because (1) defendant's representative felt that the job of teller would be too strenuous for her because of her physical makeup and because (2) Mrs. Hall agreed that she would be physically unable to perform the duties of teller. The court found that Mrs. Hall's testimony was "vague, her memory hazy, and she candidly acknowledged her inability to remember many of the specific facts, which, carried against the positive testimony of Defendant's representative to the effect that he had not hired her because of their mutual understanding that the job would be too physically demanding for her, leaves the court with no choice but to hold that Plaintiff has not sustained the burden of proof of showing discrimination as to this individual." (Emphasis supplied). Accordingly relief was denied. On this appeal the Secretary urges that in reaching its conclusion the trial court relied on erroneous standards of proof. We think this claim is wellfounded.
 
 
 16
 In discrimination cases the law with respect to burden of proof is wellsettled. The plaintiff is required only to make out a prima facie case of unlawful discrimination at which point the burden shifts to the defendant to justify the existence of any disparities. See, e. g., Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Muniz v. Beto, 434 F.2d 697 (CA5, 1970); Weeks v. Southern Bell Telephone and Telegraph Company, 408 F.2d 228 (CA5, 1969); Gates v. Georgia-Pacific Corporation, 326 F.Supp. 397 (D.C.D.Or.1970). Once the plaintiff has made out his prima facie case we look to the defendant for an explanation since he is in a position to know whether he failed to hire a person for reasons which would exonerate him. Here we are satisfied that the Secretary has made out a prima facie case of age discrimination against Mrs. Hall. Thus, it was incumbent upon the defendant to come forward with a valid justification for its refusal to hire her. We do not think that as to either of its affirmative defenses the defendant has met its burden.
 
 
 17
 We note that the undisputed documentary evidence introduced by the Secretary established that for a period of more than a year after the effective date of the Age Discrimination Act not a single person within the protected age group was hired by the defendant for the job of teller. Of thirty five persons hired as tellers or teller trainees during that period all were younger than forty and all but three were under thirty.
 
 
 18
 While these statistics by themselves would perhaps support a finding that defendant had violated the Act, see Parham v. Southwestern Bell Telephone Company, 433 F.2d 421 (CA8, 1970) the Secretary did not rest his case on statistics alone. At trial he introduced evidence of specific incidents of discriminatory conduct on the part of the defendant-such as the interview notes regarding Mrs. Hall and Mrs. Noland and the job order on file with Sigma Personnel Consultants calling for teller trainees between the ages of 21 and 24. On these facts the trial court found that Defendant had, "for a limited period of time, followed the practice of not hiring tellers within the protected age group." We would add that this discriminatory policy must have continued at least until July 14, 1969, since prior to that date no person over forty had been hired as a teller or teller trainee. The significance of the date is that Mrs. Hall made her application for a job on April 25, 1969, nearly three months before defendant's discriminatory policy in the hiring of tellers might have ceased. Certainly the fact that Mrs. Hall applied for a job at a time when defendant was pursuing a practice of age discrimination in hiring is relevant to the question whether she herself was a victim of unlawful discrimination. That fact furnishes a strong, though not conclusive, inference that Mrs. Hall was rejected for employment, at least with respect to the job of teller, because of her age. Parham v. Southwestern Bell Telephone Company, supra.
 
 
 19
 Adding to this circumstance the fact that defendant's representative wrote "too old for teller" on his interview notes on Mrs. Hall, we think it plain that the Secretary has made out a strong prima facie case of age discrimination against Mrs. Hall. See Marquez v. Omaha District Sales Office, Ford Division, 440 F.2d 1157 (CA8, 1971); Gates v. Georgia-Pacific Corporation, supra. That being so, the burden shifted to the defendant to show that it had good and sufficient reasons, other than age, for not hiring her.
 
 
 20
 Initially we consider whether defendant has successfully proved that Mrs. Hall had agreed with defendant's representative, Mr. Bunsfield, that she was physically unable to perform the duties of teller.[12] Relative to that issue this colloquy took place at trial:
 
 
 21
 "Q. What did you discuss with her about the physical aspects of the job?
 
 
 22
 A. (Mr. Bunsfield) I discussed with her the physical aspects of standing on her feet for this period of time, plus the fact that she had not done this in a great number of years. And I asked her if she thought that standing on her feet would be any physical problem to her, whether she would be able to stand on her feet for seven hours a day, five days a week.
 
 
 23
 Q. What was her answer?
 
 
 24
 A. Her answer, in my opinion, was that-
 
 MR. WOODSON:
 
 25
 Objection.
 
 THE COURT:
 
 26
 I will sustain the objection.
 
 
 27
 Just tell us, as best you can, what she said, sir.
 
 BY MR. CURRAN:
 
 28
 Q. You can summarize what she said.
 
 
 29
 A. Talking with hundreds of people a day, I am not sure that I can say exactly what she said.
 
 THE COURT:
 
 30
 Well, not exactly, but the best you remember what she said. What was a summary of her answer?THE WITNESS:
 
 
 31
 That she would accept my decision that she was not able to stand on her feet.
 
 BY MR. CURRAN:
 
 32
 Q. Did you think she was not able to stand on her feet?
 
 
 33
 A. I thought she was not able to stand on her feet, and she seemed to accept that decision.
 
 MR. WOODSON:
 
 34
 Objection to that business about what it seemed to him.
 
 THE COURT:
 
 35
 I will sustain the objection to what it seemed to him and I will permit everything else. I realize it is the opinion of the witness. But go ahead.
 
 BY MR. CURRAN:
 
 36
 Q. Did she at any time tell you she was able to stand on her feet for a period of time?
 
 THE COURT:
 
 37
 Or to put it another way, after you expressed your opinion, did she dissent in any manner from that opinion?
 
 THE WITNESS:
 
 38
 No, sir, she did not."
 
 
 39
 We think this testimony falls short of establishing that Mrs. Hall actually agreed as to her physical incapacity. The essence of an agreement is mutual assent and in a court of law the existence of assent can only be reconstructed through evidence of words or deeds which objectively manifest the expression of assent. See 17 Am.Jur.2d, Contracts Secs. 18, 19, 20 (1964). That Mrs. Hall did not "dissent" from Mr. Bunsfield's opinion that she was physically unsuited to doing the job does not, to our minds, establish the antonymous proposition that she affirmatively assented. From this testimony there is no indication that Mrs. Hall did anything or said anything which could be construed as a manifestation of agreement. We think, therefore, that defendant has failed to carry its burden with respect to this defense.[13]
 
 
 40
 We turn, then, to defendant's second affirmative defense, i. e., that Mrs. Hall was not hired because of Mr. Bunsfield's unilateral opinion that she was physically unable to perform as teller.[14] Defendant claims, in short, that Mrs. Hall was too heavy for the job. This explanation is plainly at odds with the notation on Mr. Bunsfield's interview notes to the effect that she was "too old for teller." We attach little or no credence to Mr. Bunsfield's post-event rationalization that he had meant to say "too heavy" not "too old" for teller. This interpretation was proffered to a compliance officer from the Department of Labor who was at that time investigating the defendant for possible violations of the Fair Labor Standard Act and the Age Discrimination Act. It is thus highly suspect.
 
 
 41
 Even if we accept as true defendant's asseveration that the words "too old for teller" actually meant that Mrs. Hall was too heavy to be a teller, it is nonetheless clear that this physical structure standard was applied in an unequal manner, to the detriment of older applicants. With regard to another applicant, age 25, Mr. Bunsfield wrote, "heavy girl, may make teller," (emphasis added) this despite the fact that she was the same height as, but twenty pounds heavier than Mrs. Hall. The differential treatment thus accorded two interviewees for the same position is fully consistent with the Secretary's allegation of age discrimination against Mrs. Hall.
 
 
 42
 Moreover, it appears from the testimony that insofar as defendant's actual hiring practices were concerned, heaviness was not a disqualification for the job of teller. Although Mr. Bunsfield indicated that heavier persons sometimes have difficulty in standing for long periods of time, he nevertheless maintained that he normally did not consider physical characteristics in determining whether an applicant was qualified for the job.[15]
 
 
 43
 In light of the foregoing we are satisfied that defendant has not successfully established that Mrs. Hall was not hired as a teller because of her alleged physical incapacity.
 
 
 44
 Inasmuch as defendant has failed to prove either of its affirmative defenses, we conclude that Mrs. Hall was not hired as a teller because of her age. This being a violation of Section 4(a) (1) of the Act, she is entitled to relief. The trial court's denial of an injunction restraining defendant from withholding back wages to Mrs. Hall must therefore be reversed.
 
 INJUNCTIONS AGAINST FUTURE VIOLATIONS
 
 45
 The Secretary next contends that the injunction issued by the trial court was too limited in scope. The court, having found discrimination in the hiring of tellers, enjoined defendant from future violations of Section 4 of the Age Discrimination Act, but only with regard to the hiring of tellers. In construing the propriety of this order we look for guidance to cases arising under Section 17 of the Fair Labor Standards Act (29 U.S.C. Sec. 217), inasmuch as that section has been incorporated by reference into the Age Discrimination Act. The ground in that area has been well-plowed. We note that once a violation of the Act has been established "the decision whether to issue an injunction against further violations rests primarily in the discretion-judicial discretion-of the trial court." Mitchell v. Pidcock, 299 F.2d 281, 286 (CA5, 1962). As indicated previously we are in agreement with the trial court's finding that the defendant has engaged in unlawful age discrimination and neither we nor the defendant dispute that the court properly exercised its discretion in deciding to issue an injunction. Rather, we confine our inquiry to the question whether this injunction, applicable only to the hiring of tellers, is too narrow. We are of the opinion that it is.
 
 
 46
 In seeking to establish at trial that Mrs. Hall had been a victim of discrimination the Secretary introduced evidence of specific discriminatory acts by the defendant which indicated the existence of a discriminatory hiring policy. There can be no doubt that the evidence is consistent with a finding of unlawful discrimination in the hiring of tellers and teller trainees. However, Mrs. Hall did not specifically apply for the job of teller or teller trainee; she applied for any job. Therefore any evidence which tends to show that defendant's discriminatory policy was not limited to the jobs of teller and teller trainee would be relevant to this case, first as to the specific question whether Mrs. Hall herself was discriminated against and second as to the more general problem of formulating an appropriate injunctive decree.
 
 
 47
 The Secretary introduced into evidence a letter from a representative of the Department of Labor, attached to which was an advertisement placed by defendant (though not by its personnel department) in a local newspaper. This advertisement, which was run shortly before Mrs. Hall's application for a job, sought to attract a "young man" (emphasis added) for the position of financial advertising assistant. The trial court admitted the letter and attached clipping for the limited purpose of establishing that defendant was aware of the prohibitions of the Age Discrimination Act at the time Mrs. Hall applied for a job. However, we think this exhibit has broader significance and inasmuch as it has been included in the record we consider it as substantive evidence of a policy of age discrimination by the defendant in areas other than teller positions.[16]
 
 
 48
 It is significant that this ad was placed during that period (June, 1968 to July, 1969) when it is clear that defendant was discriminating against teller applicants on the basis of age. The ad indicates circumstantially that at this time defendant had a youth-oriented policy in hiring not only with respect to tellers and teller trainees, but with respect to other jobs as well. We do not say that the advertisement itself would constitute a violation of the Act. However, insofar as it suggests that discrimination may have extended beyond the job of teller, we think that a broader injunction than that issued by the trial court is warranted.
 
 
 49
 More importantly, we find no legal justification in compartmentalizing an employer corporation in order to warrant an injunction against illegal employment practices to be applied only as to the particular job category in which the violation occurred. When confronted by a situation such as this courts should not be loathe to issue injunctions of general applicability. See Wirtz v. Ocala Gas Company, 336 F.2d 236 (CA5, 1964). The aim of such an injunction is remedial, not punitive. McComb v. Jacksonville Paper Company, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). As this court said in a Fair Labor Standards Act case, "The injunctive processes are a means of effecting general compliance with national policy as expressed by Congress, a public policy judges too must carry out-actuated by the spirit of the law and not begrudgingly as if it were a newly imposed fiat of a presidium." Mitchell v. Pidcock, supra, 299 F.2d at 287.
 
 
 50
 It is to be noted that an injunction in this type of case is not a burdensome thing; it simply requires the employer to obey the law. Moreover, it is an effective device for enforcement of the Act. The Labor Department ought not be charged with the responsibility for checking back on past violators to make certain they are obeying the law. Economy of administrative effort dictates that "after an employer has once violated the Act he should bear his own responsibility for the future." Goldberg v. Cockrell, 303 F.2d 811, 814 (CA5, 1962). Were the injunction in the instant case to be limited to the hiring of tellers the government would have to maintain its surveillance over defendant in order to insure that violations of the Act in job categories other than teller did not occur. Having once made out a case of unlawful discrimination, we think the government should not have to bear this administrative burden. This consideration, balanced against the minimal inconvenience to the defendant, weighs heavily in favor of enforcement by an injunction of general applicability without reference to specific jobs. We conclude therefore that the trial court's order must be modified so as not to specify particular job categories.
 
 
 51
 Finally, we consider whether the trial court properly limited the scope of the injunction by adding the language: "Such injunction is not to be construed to prohibit the Defendant institution, however, from refusing to hire tellers within the protected age bracket of this act who for whatever reason may not have the necessary qualifications to perform the job of a teller." (emphasis added). Arguably this clause detracts from the prohibitory effect of the injunction. As worded, it would permit advanced age to operate as a job disqualification if in the judgment of defendant youth were deemed a required "qualification" for a particular job. Such a result is plainly counter to the purposes of the Age Discrimination Act. The injunction to be issued by the trial court needs no modification. It simply prohibits violation of Section 4 of the Age Discrimination Act of 1967. This section itself contains the only exclusions from the prohibitory language of the Act. They are contained in subsection (f) (1), relating to "bona fide occupational qualifications" and to "reasonable factors other than age." It adds nothing to the clarity of the injunction for the court to add any other exclusionary language. Instead, it detracts from its clarity. Thus, we hold that this sentence should be stricken from the order.
 
 
 52
 The denial of an injunction restraining defendant from withholding payment of back wages is reversed and the case is remanded for the entry of an order granting such relief and modifying the injunction against future violations as noted herein.
 
 
 53
 Affirmed in part, reversed in part and remanded.
 
 
 
 [1]
 29 U.S.C. Sec. 621 et seq
 
 
 [2]
 29 U.S.C. Sec. 621(b)
 
 
 [3]
 29 U.S.C. Sec. 631
 
 
 [4]
 42 U.S.C. Sec. 2000e-1 et seq
 
 
 [5]
 29 U.S.C. Sec. 623(f)
 
 
 [6]
 Section 7b of the Act [29 U.S.C. Sec. 626 (b)] provides that ". . . this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof) and 217 of this title. . . ."
 
 
 [7]
 Id
 
 
 [8]
 29 U.S.C. Secs. 216 and 217
 
 
 [9]
 29 U.S.C. Sec. 623(a) (1): "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."
 
 
 [10]
 There is no evidence on this record as to Mrs. Noland's size. Mrs. Hall, at the time, was five feet five inches tall and weighed 142 pounds
 
 
 [11]
 A wage-hour investigation of Sigma Personnel Consultants was conducted in May, 1969; at that time the compliance officer indicated to Sigma's manager that his company, by maintaining such age limitations in job orders, might be in violation of the Age Discrimination Act. As a result of this warning, the age requirement on the defendant's job order was scratched out, but the underlying figures are still visible
 
 
 [12]
 We assume here that if Mrs. Hall had knowingly agreed that she was physically incapable of doing the work, such agreement, if proved, would constitute a justifiable reason for defendant's failure to hire her
 
 
 [13]
 The trial court denied relief to Mrs. Hall on the basis of its finding that there had been a "mutual understanding" between Mr. Bunsfield and Mrs. Hall as to the latter's physical incapacity. Defendant urges that this finding of fact is insulated by the clearly-erroneous standard of F.R.Civ.P. Rule 52(a). However, we have determined that, in reaching its finding, the trial court incorrectly applied the burden of proof. Fact or fact-legal conclusions induced by erroneous legal standards do not fall within the ambit of Rule 52(a). Shultz v. First Victoria National Bank, 420 F.2d 648 (CA5, 1969)
 
 
 [14]
 A third defense raised at trial was that Mrs. Hall lacked the requisite experience. We think this claim lacks merit. Mrs. Hall was equally qualified (if not more so) than some or most of the younger persons hired as tellers. Moreover, Mr. Bunsfield admitted on cross-examination that for teller training it was not necessary to have job experience
 
 
 [15]
 The following testimony is instructive:
 Q. As a result of this experience is there anything in particular, then, that you look for in your considering a person or persons who apply as a teller?
 A: (Mr. Bunsfield): Looking for past experience.
 Q: Physically, I mean . . . Are there any physical characteristics that you look for?
 A: No.
 Q: Do you consider how big they are, how tall they are, how thin they are, how fat they are, and what their weight is?
 A: Normally, no.
 
 
 [16]
 When this letter with advertisement attached was tendered, no objection was made to the ad on the ground of want of proof or authenticity, either of which might well have been a proper ground to limit the purpose of the exhibit. When the defendant thereafter testified concerning the ad, fully recognizing it as having been inserted in the local newspaper, any such objection would no longer be tenable. Moreover, the substance of the advertisement was adverted to by the witness Bunsfield who stated that he had admonished a public relations employee for running it. We consider that the advertisement therefore is before the court for all purposes