477 F.2d 1038
 5 Fair Empl.Prac.Cas. 925,
6 Fair Empl.Prac.Cas. 292,
5 Empl. Prac. Dec. P 8567,
6 Empl. Prac. Dec. P 8843
 Josephine JURINKO and Ida M. Seibert, Appellants,
v.
EDWIN L. WIEGAND COMPANY, a corporation and Local 1020, UAW,
an unincorporated association.
Josephine JURINKO and Ida M. Siebert
v.
EDWIN L. WIEGAND COMPANY, Appellant, a corporation and Local
1020, UAW, an unincorporated association.
 
 Nos. 72-1043, 72-1044.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 6, 1973.
Decided April 17, 1973.
As Amended June 25, 1973.
 Irving L. Bloom, Dent & Bloom, Greensburg, Pa., Robert Allen Sedler, College of Law, University of Kentucky, Lexington, Ky., for cross appellants in No. 72-1043 and appellees in No. 72-1044.
 Arnold D. Wilner, Theodore Goldberg, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., Roger Edgar, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellees in No. 72-1043 and appellant in No. 72-1044.
 Before BIGGS and GIBBONS, Circuit Judges, and HUYETT, District Judge.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 The plaintiffs-appellees cross-appellants, Mrs. Josephine Jurinko and Mrs. Ida M. Seibert, alleged in Count II of their complaint[1] filed against Edwin L. Wiegand Company (Wiegand) that Wiegand refused to employ them in its factory because they were married women, thereby discriminating against them on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C. Sec. 2000e-2(a)(1).[2] Jurisdiction is based on 42 U.S.C. Sec. 2000e-5(f) and 28 U.S.C. Secs. 1343(3) and 1331(a).
 
 
 2
 The Equal Employment Opportunity Commission found probable cause to believe that Wiegand had engaged in a discriminatory employment practice but could not mediate the matter.[3] On February 14, 1969, Wiegand offered employment to Mrs. Jurinko and Mrs. Siebert, but on the advice of a representative of EEOC both rejected the offer. This action was instituted on February 28, 1969, and after trial to the court, Judge Teitelbaum found that Wiegand had no general policy of discriminating against married women, but he did find that Mrs. Jurinko and Mrs. Siebert were discriminated against and that such discrimination was not based on a "bona fide occupational qualification."[4] Judgment was entered in the plaintiffs' favor awarding them $15,784 representing back wages, together with an award of an additional sum in the amount of $3,946 for attorney fees. Judge Teitelbaum also directed Wiegand to offer Mrs. Jurinko and Mrs. Siebert employment "at the next nearest opportunity."5,6
 
 
 3
 Wiegand appealed the court's judgment at our No. 72-1044, asserting (1) that the plaintiffs' claims are barred because charges were not filed with the Commission within 90 days of the occurrence of the alleged unlawful employment practice as required by 42 U.S.C. Sec. 2000e-5(d), (2) that the evidence does not support the district court's conclusion that the plaintiffs were discriminated against on account of their marital status, (3) that if there was such discrimination, it was based on a "bona fide occupational qualification" which the plaintiffs did not satisfy, and (4) that the damages awarded plaintiff Siebert were excessive. The plaintiffs have appealed at our No. 72-1043 insofar as the judgment holds that Wiegand's general hiring policy for production department jobs did not discriminate against married women and insofar as it denied recovery of back pay after Feb. 14, 1969, and held that plaintiffs' reinstatement should be as new employees without seniority. It should be noted that the plaintiffs have not appealed from the failure of the district court to treat this suit as a class action under Rule 23, F. R.Civ.P., 28 U.S.C.[7] A pre-trial stipulation was entered into by the parties and filed, and reference will be made to it from time to time. The material facts are substantially uncontested, and as Judge Teitelbaum stated: "[I]t is the inferences to be drawn or not to be drawn from the facts that are the core of the controversy." 331 F.Supp. at 1185.
 
 
 4
 According to the stipulation the plaintiffs were employees of Wiegand for a number of years prior to December 10, 1953; that at that time both were discharged from employment because of their respective marriages; that Wiegand's policy of discharging women upon their marriages and of not hiring married women was instituted at the close of World War II for the purpose of providing jobs for "bread winners" returning after the war and that this policy was lawful at least until July 2, 1965, the effective date of the Civil Rights Act of 1964. In July, 1965, the plaintiffs approached Wiegand's Personnel Director and requested that they be reinstated in their former jobs. The Personnel Director refused this request, stating they were not entitled to reinstatement and in any event the company was not then hiring employees. Thereafter, on September 7, 1965, Mrs. Jurinko submitted a written application for employment with Wiegand, and Mrs. Seibert submitted a similar request to Wiegand on January 10, 1966. At this time, both plaintiffs were informed that the company was not then hiring any employees but that their applications would be kept on file for future reference. In June, 1966, the plaintiffs again contacted the Personnel Director seeking employment and were again informed that Wiegand was not hiring at that time. The plaintiffs filed a charge of discrimination against Wiegand with the Equal Employment Opportunity Commission on July 29, 1966.
 
 
 5
 The district court stated as follows in respect to the contention of Wiegand that the charges were not timely filed: "The company contends that because the charge was filed with the Commission more than 90 days after the original meeting in June of 1965, it was untimely, and therefore this Court lacks jurisdiction of this action. Section 2000e-5(d) of 42 U.S.C. does provide that charges with the Commission shall be filed within 90 days of the occurrence of the alleged unlawful employment practice. It is clear, however, that the plaintiffs' reapplication in June of 1966 represents the occurrence of an alleged unlawful employment practice, and consequently this Court is not without jurisdiction. See Cox v. United States Gypsum Co., 409 F.2d 289 (C.A. 7, 1969)." 331 F.Supp. at 1186, n. 3.
 
 
 6
 We are in agreement with the district court's conclusion, for there were three separate and distinct acts, the latter of which occurred within the 90-day period. Therefore the 90-day statutory period commenced to run anew from the last allegedly unlawful employment practice. Molybdenum Corp. of America v. Equal Employment Opportunity Commission, 457 F.2d 935 (10 Cir. 1972). The ground raised by Wiegand, that the plaintiffs' failed to timely pursue their administrative remedy, is thus without merit.[8]
 
 
 7
 Turning to the contentions in the matter of the district court's conclusions regarding discrimination, the statistical evidence and the attitude of Wiegand's personnel directors are well set out in Judge Teitelbaum's opinion, 331 F.Supp. at 1186, as follows: "Statistically, the evidence is that (1) at all relevant times the company employed, in production, approximately 900 persons; (2) of these approximately 900 persons, 59 were women on July 2, 1965, 58 on May 15, 1966, 56 on December 31, 1966, and 44 on March 1, 1971; (3) at all relevant times, of the women employed only three were married; (4) at all relevant times, only two married women, other than the plaintiffs, applied for employment in production [It must be noted in this regard that both of these women were hired in January of 1969, after the Commission had notified the plaintiffs of their right to sue Wiegand under the Civil Rights Act.]; and (5) during the period from May 15, 1966 to December 31, 1966, forty-three new employees were hired, all of whom were males. There is no evidence of the qualifications of the forty-three males hired. There is evidence, however, that the plaintiffs' applications were on file during the period from May 15 to December 31, 1966, that the company was aware of their applications, and that prior experience and a good work record with the company (which each plaintiff had) were qualifications which favored an applicant. Asked why the plaintiffs had not been hired during that period, the then Personnel Director testified that he '* * * really [didn't] know * * *' but that it '* * * could [have been] many reasons * * *.' A later Personnel Director testified that the company's practice of permitting 'bumping' (by seniority) for each new job opening in production made it mandatory that new employees be physically able to perform each and every job in production (since the new employees were ultimately 'bumped' to the most physically taxing jobs) and that the assumption under which the company operated was that women were physically unable to perform each and every production job. In conclusion, both Personnel Directors testified that the company had not pursued a policy of discrimination against married women."
 
 
 8
 On the basis of the above facts, the court concluded: "We do not think however, that the statistical evidence introduced in this case reasonably supports a conclusion that the company's general hiring policy discriminated against married women. The low number of married women employees of the company must be considered in light of the company's pre-Civil Rights Act policy and the number of married women who have applied for employment since the termination of that policy. The uncontradicted testimony is that from 1965 through 1968, the plaintiffs were the only married women who applied to the company for work in production. Two others apparently applied in early 1969 and both were offered employment. A general policy of discriminatory hiring cannot logically be concluded. With specific regard to the plaintiffs, however, the evidence of the company's extensive hiring of men during a period when the plaintiffs, with prior experience and good work records, were actively seeking employment from the company, we think is sufficient to support, if only preponderantly, an unexplained inference of discrimination." 331 F.Supp. at 1187.
 
 
 9
 The record shows that if Wiegand did change its prior policy of not employing married women in the production department[9] it kept remarkably silent about it. Its Personnel Director, Bushnell, did state to the union on a form supplied by the Government that the company was obeying the Civil Rights Act of 1964, but Bushnell did not tell the union that the company was "going to be hiring married women from here on in." Such forms were posted on the bulletin boards, but again, Bushnell never posted any notices that female employees in the production department would no longer be discharged upon marriage. Nevertheless, we cannot say that the district court's conclusion that no general discriminatory hiring policy existed was unwarranted.
 
 
 10
 Nor was the evidence insufficient to support the finding of a violation of Title VII as to these particular plaintiffs. The evidence, especially the fact that during the six month period following the plaintiffs' application (and when the plaintiffs were told that the company was not then hiring), 43 new male employees were hired despite the facts of plaintiffs' prior experience and good work records with the company, does support an inference of discrimination as the district court found. Plaintiffs made out a prima facie case of unlawful discrimination, thereby shifting the onus of going forward with evidence to Wiegand. As was said in Hodgson v. First Federal Savings and Loan Association of Broward County, Florida, 455 F. 2d 818, 822 (5 Cir. 1972), "In discrimination cases the law with respect to burden of proof is well settled. The plaintiff is required to make out a prima facie case of unlawful discrimination at which point the burden shifts to the defendant to justify the existence of any disparities. See, e.g., Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L. Ed. 1074 (1935); Muniz v. Beto, 434 F. 2d 697 (CA 5, 1970); Weeks v. Southern Bell Telephone and Telegraph Company, 408 F.2d 228 (CA 5, 1969); Gates v. Georgia-Pacific Corporation, 326 F. Supp. 397 (D.C.D.Or.1970). Once the plaintiff has made out his prima facie case we look to the defendant for an explanation since he is in a position to know whether he failed to hire a person for reasons which would exonerate him." See also United States v. Hayes International Corporation, 456 F.2d 112 (5 Cir. 1971). In the case at bar, Wiegand was unable to offer any explanation for its having filled its 43 job vacancies solely with men to the exclusion of the plaintiffs,[10] and it failed to rebut the inference, i.e., prima facie case, of discrimination. That the plaintiffs may not have been physically qualified to perform all jobs in the factory[11] is not relevant to this issue, for the company did not determine this while plaintiffs' applications were pending nor did it assert this as a reason for not hiring the plaintiffs.[12] Nor are the two conclusions concerning the absence of a general policy of discrimination but the presence of discrimination against these plaintiffs inconsistent.
 
 
 11
 Wiegand originally took the position that discrimination against married females was not discrimination "on the basis of sex within the meaning of the Act." This position was, of course, dropped in the light of Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). In the Phillips case the Supreme Court made it clear that under Title VII of the Act, 42 U.S.C. Sec. 2000e-2, an employer may not refuse to hire women with preschool age children while hiring men with such children. The facts of the Phillips case are somewhat different from those of the case at bar but the analogy between Phillips and the instant case is plain. Employment practices which vary in their applicability to married females and married males constitute discrimination on the basis of sex, the only distinguishing characteristic being the sex of the married persons. A different standard is clearly applied to men than to women. See Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7 Cir.1971), cert. denied 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). Wiegand now argues, however, that the plaintiffs failed to prove discrimination on the basis of sex since no showing was made as to whether the men hired while the plaintiffs' applications were pending were married. Wiegand's point is well taken, and we agree that the plaintiffs did not make out a case of sex discrimination based on their status as married women. Discrimination against married women constitutes discrimination on the basis of sex only if a different standard, i. e., the marital status of the person, has been applied to men and women. Absent proof of the standard applied to men, obviously the plaintiffs have not established that such standard differs from the one applied to women.
 
 
 12
 Although the judgment therefore cannot stand on the theory that the plaintiffs were discriminated against because they were married women, nevertheless, as discussed above, the evidence is sufficient to support the judgment on the theory that the plaintiffs were discriminated against because of their status as women. We recognize that the latter theory was not overtly an issue in the case, for the complaint alleged discrimination against married women[13] and discrimination against women as such was not included in the list of contested issues contained in the pre-trial stipulation.[14] An appellate court, however, may uphold a judgment on any theory which finds support in the record[15] and may affirm the decision of a lower court if the result is correct "although the lower court relied upon a wrong ground or gave a wrong reason."[16] Under Rule 15(b), F.R.Civ.P., 28 U.S.C., a liberal provision is made for amendments to conform the pleadings to the evidence, and this court may consider issues so raised even though no formal application is made to amend. See Underwriters Salvage Co. of New York v. Davis and Shaw Furniture Co., 198 F.2d 450, 453 (10 Cir.1952). "The fact that this involves a change in the . . . legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case."[17] Nor do we think that the pretrial stipulation prevents this court from applying proper legal principles to the facts disclosed by the proof.[18] The same considerations which govern under Rule 15(b) should also control the determination of whether a different theory is foreclosed by the stipulation, that is whether the defendant would be prejudiced, i. e., whether it had a fair opportunity to defend and whether it could offer any additional evidence on the different theory.
 
 
 13
 In the case at bar, we see no way in which Wiegand's presentation of its case could have been prejudiced. There is no dispute as to the essential facts, only the inferences therefrom. Wiegand had full opportunity to justify its failure to hire the plaintiffs. Moreover, the company's main line of defense to the plaintiffs' alleged theory of discrimination against them on account of their status as married women was that women as a class were physically unable to perform each and every production job. See note 11, supra, for an explanation of the company's policy which it contended set up the so-called "bona fide occupational qualification." This defense is irrelevant to the issue of discrimination against women on account of their marital status, but it is relevant to the theory now being considered, discrimination against women as a class and the plaintiffs as members of this class. We therefore hold that the conclusion of the district court that the plaintiffs were discriminated against must be affirmed, albeit on a different theory than that relied upon below.
 
 
 14
 As to damages, the district judge stated: "Damages are computed as follows. The parties have stipulated that if the plaintiffs had been employed by the company for the years 1966, 1967 and 1968, Mrs. Jurinko and Mrs. Seibert would have earned $5,127.00, $5,855.00 and $5,959.00, and $5,099.00, $5,855.00 and $5,959.00, respectively. For the period from July of 1966 to February of 1969, Mrs. Jurinko would have earned a total of approximately $14,377.00 and Mrs. Seibert would have earned a total of approximately $14,363.00. In assessing back pay, however, Sec. 706(g) of the Civil Rights Act requires that, '* * [I]nterim earnings or amounts earnable with reasonable diligence by * * * persons discriminated against shall operate to reduce the back pay otherwise allocable.' 42 U.S.C. Sec. 2000e-5(g). The parties have also stipulated that during the period from July of 1966 to February of 1969 Mrs. Jurinko, working elsewhere, made a total of $6,478.00. Reducing $14,377.00 by $6,478.00 results in damages in the amount of $7,899.00 to Mrs. Jurinko. Mrs. Seibert, on the other hand, did not work during this period. While she testified that she undertook some efforts to obtain other employment, we think that Mrs. Jurinko's successful efforts are a more accurate measure of 'amounts earnable with reasonable diligence.' The amount of Mrs. Seibert's damages, then, are $14,363.00 less $6,478.00, or $7,885.00. In addition, the plaintiffs are to be offered employment in production with the company, of course, as new employees. An appropriate Order will be entered." 331 F.Supp. at 1188.
 
 
 15
 Section 706(g) of Title VII, 42 U.S.C. Sec. 2000e-5(g), authorizes appropriate judicial relief from unlawful discriminatory practices.[19] "This grant of authority should be broadly read and applied so as to effectively terminate the practice and make its victims whole," Bowe v. Colgate Palmolive Company, 416 F.2d 711, 721 (7 Cir. 1969), and we believe that courts have a duty to grant relief which so far as possible eliminates the discriminatory effects of the past as well as bars like discrimination in the future. Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965).
 
 
 16
 We can perceive no basis for the trial court to have refused to award back seniority or for its conclusion that "the plaintiffs are to be offered employment in production with the company, of course, as new employees." Seniority is, of course, of great importance to production workers for it determines both opportunities for job advancement and the order of layoff in the case of a reduction in a company's operating forces. It is our view that the plaintiffs are entitled to seniority and back pay dating from the time of the discriminatory employment practice up to the time they are actually reinstated. Only in this way will the present effects of the past discrimination be eliminated.
 
 
 17
 The trial court refused to accept this view, having found that the "discrimination ceased in February of 1969 when the company finally offered the plaintiffs employment,"[20] for the "rejection of the offers was not within the control of the company and should not work to its disadvantage."[21] We cannot agree with this position. The terms of the 1969 job offers were within Wiegand's control, and it did not offer the plaintiffs back seniority or back pay. The offer that was made did not rectify the effects of its past discrimination, and the plaintiffs were under no duty to accept such an offer. See Sprogis v. United Air Lines, supra. Even though the discrimination ceased with the job offers, as the district court found, the effects of such discrimination did not cease. Under the circumstances of this case, it is the latter which is the more significant factor in formulating an appropriate remedy. While it is true that acceptance of these job offers would have mitigated damages,[22] plaintiffs did not act unreasonably in refusing the offers. Thus "amounts earnable with reasonable diligence" can not be equated with a compulsion to accept Wiegand's offer, but rather, must be determined as to post February, 1969 earnings by the district court on remand.
 
 
 18
 Lastly, we do not think that the damages awarded to Seibert were excessive. The district court properly reduced the amount of damages awarded her by an amount it considered "earnable with reasonable diligence," and we do not think the award, so reduced, constituted an abuse of discretion. See Local 53 of International Association of Heat and Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047, 1052 (5 Cir. 1969).
 
 
 19
 The district court is directed to modify its judgment to expand the award to the plaintiffs to include seniority and back pay from the date of the unlawful employment practice in June, 1966, up to the date on which they are actually reinstated.[23] In all other respects, the judgment will be affirmed.
 
 
 20
 GIBBONS, Circuit Judge (concurring).
 
 
 21
 I agree with the analysis of the issues in this case set forth in Judge Biggs' opinion with one exception which in no way affects the outcome. It seems to me that the admitted policy of discrimination against married women, which antedated the enactment of 42 U.S.C. Sec. 2000e-2 and which never operated against married men, together with the evidence establishing that a discriminatory policy continued to operate against the appellants who are married women after the passage of the Act, sufficiently establish that these married women were discriminated against on the basis of their sex. Thus, I do not agree that we must decide the cases on a theory different from that relied on by the district court.
 
 
 
 [1]
 Count I of the complaint was dismissed by Judge Teitelbaum on Wiegand's motion that the cause of action asserted was barred by the statute of limitations. This ruling is not challenged before us in this court
 
 
 [2]
 Section 703 of the Civil Rights Act, 42 U.S.C. Sec. 2000e-2, provides as follows:
 "(a) It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire * * * or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex. * * * (c) It shall be an unlawful employment practice for a labor organization-(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his * * * sex. * * *
 "(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the basis of his * * * sex * * * in those certain instances where * * * sex * * * is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise. * * *"
 
 
 [3]
 The Commission's findings are not controlling in this action. See Fekete v. United Steel Corp., 424 F.2d 331 (3 Cir. 1970)
 
 
 [4]
 See 42 U.S.C. Sec. 2000e-2(e)(1), supra note 2
 
 
 [5]
 The suit originally included a local union as defendant but Judge Teitelbaum found the union was free from fault and dismissed the action against it. This ruling is not challenged here
 
 
 [6]
 Judge Teitelbaum's opinion is reported at 331 F.Supp. 1184 (W.D.Pa.1971)
 
 
 [7]
 Judge Teitelbaum correctly stated in note 1 to his opinion, 331 F.Supp. at 1185: "This action was instituted as a class action on behalf of all similarly situated persons. The evidence, however, does not reveal any other similarly situated persons, and therefore the minimum prerequisite to the maintenance of a class action under F.R.Civ.P. 23, viz., that the class be so numerous that joinder of all members is impracticable, is not satisfied. Accordingly, this action is not properly maintainable as a class action and will not be treated as one."
 
 
 [8]
 Pursuit of the administrative remedy is a prerequisite to a suit such as that at bar
 
 
 [9]
 The production department is what we are concerned with; there has been no suggestion of discrimination against married women in Wiegand's clerical force
 
 
 [10]
 For example, the Personnel Director at the time plaintiffs' applications were on file testified that he "really [didn't] know . . ." why plaintiffs had not been hired
 
 
 [11]
 Due to plant wide seniority provisions in Wiegand's labor agreement, job vacancies were bid on by the existing labor force with the result that new employees were often "bumped" to the most physically taxing jobs in production. Wiegand therefore had a policy requiring that new employees be physically able to perform each job in production
 This policy cannot provide the basis for a "bona fide occupational qualification." It is clear that Wiegand proceeded on the assumption that women as a class were physically unable to perform each and every job in production, but as Judge Teitelbaum pointed out in his thorough and thoughtful opinion, 331 F. Supp. at 1187-1188: "In Ridinger v. General Motors Corp., 325 F.Supp. 1089 (D.C.S.D.Ohio, 1971), the Court decided that, '[A] bona fide occupational qualification is not established by an assumption or "stereotyped characterization" that very few women could perform a particular job.'
 "To establish a 'bona fide occupational qualification,' the Court held, requires reference to individual capacities of individual women. See Weeks v. Southern Bell Telephone and Telegraph Co., 408 F.2d 228 (C.A. 5, 1969) and Richards v. Griffith Rubber Mills, 300 F.Supp. 338 (D.C.Or., 1969). Wiegand's assumption, therefore, falls short of establishing an acceptable qualification, and its discriminatory employment practices regarding the plaintiffs are thus rendered legally indefensible." (Notes omitted.)
 We agree with the district court's conclusions.
 
 
 [12]
 Contrary to the company's argument, the plaintiffs did not have the burden of proving that they were so qualified in making their prima facie case of discrimination. Rather, we think that once plaintiffs have made a prima facie showing of discrimination it was incumbent upon the company to prove that the plaintiffs were not qualified in justification of its failure to hire them. See Hodgson v. First Federal Savings and Loan Association of Broward County, Florida, supra
 
 
 [13]
 Paragraph 15 of the complaint states: "[D]efendant Company continued its practice of refusing to hire married women as production employees and of discharging any female production employee who became married."
 
 
 [14]
 "Pretrial Stipulation * * * II. The contested issues raised by the written pretrial statements of the parties are:
 "(1) Did the Company refuse to hire the plaintiffs when they made application for employment in July of 1965 and at various times in 1966?
 "(2) If the answer to No. 1 above is yes, then was the failure to hire due:
 (1) to a policy of discrimination which required that the Company's female production employees be and remain single as a condition of employment."
 
 
 [15]
 See Picture Music, Inc. v. Bourne, Inc., 457 F.2d 1213 (2 Cir. 1972)
 
 
 [16]
 Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). Accord, J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940). See also Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Lum Wan v. Esperdy, 321 F.2d 123 (2 Cir. 1963)
 
 
 [17]
 3 Moore's Federal Practice p 15.13, at 985
 
 
 [18]
 See New Amsterdam Casualty Co. v. Waller, 323 F.2d 20 (4 Cir. 1963)
 We do not think that we are foreclosed from considering this theory of recovery for the issue of discrimination against women as a class was injected into the case by Wiegand and was therefore tried below with Wiegand's implied consent. By its own admission and evidence, Wiegand discriminated against women by employing a sterotyped characterization that women were physically unqualified for the jobs the plaintiffs had applied for. See note 11, supra. See F.R.Civ.P. 15(b) and 16. Rule 16 should be read in light of Rule 15(b). See 3 Moore's Federal Practice p 15.13 , at 982 and note 11 cited to that text.
 
 
 [19]
 Section 706(g) of Title VII, 42 U.S.C. Sec. 2000e-5(g) provides in part: "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay. . . . Interim earnings or amounts earnable with reasonable diligence by the person or persons discrimimated against shall operate to reduce the back pay otherwise allowable."
 
 
 [20]
 331 F.Supp. at 1188
 
 
 [21]
 331 F.Supp. at 1188, n. 8
 
 
 [22]
 42 U.S.C. Sec. 2000e-5(g) provides in part: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."
 
 
 [23]
 The back pay, of course, must be reduced by the amounts which the district court found to be "interim earnings or amounts earnable with reasonable diligence." Since such amounts pertained to pre-February, 1969 earnings, the post February, 1969 back pay to be awarded must be similarly reduced