624 F.2d 436
 22 Fair Empl.Prac.Cas. 1818,
23 Empl. Prac. Dec. P 31,004
Lila Jean JACKSON
v.
U. S. STEEL CORPORATION.
Lila Jean JACKSON, Appellant in No. 79-2198.
U. S. STEEL CORPORATION, Appellant in No. 79-2199.
 Nos. 79-2198, 79-2199.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 12, 1980.
Decided June 9, 1980.
 
 John M. O'Connell, Jr. (argued), O'Connell & Silvis, Greensburg, Pa., Beverly A. Gazza, Indiana, Pa., for Lila Jean Jackson, appellant in No. 79-2198 and appellee in No. 79-2199.
 R. M. Guttshall III (argued), Pittsburgh, Pa., for U. S. Steel Corp., appellant in No. 79-2199 and appellee in No. 79-2198.
 Before ADAMS, VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 In these appeals defendant U. S. Steel Corporation (U. S. Steel) challenges the judgment granted in favor of one of its former employees, Lila Jean Jackson, in a suit alleging discrimination in employment. U. S. Steel asserts that the district court applied incorrect legal standards in assessing plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976). Jackson cross-appeals. Specifically, U. S. Steel argues that the district court erred in defining the elements plaintiff must prove in order to establish a prima facie case of discrimination. U. S. Steel also contends that the court imposed too heavy a burden on the employer in its efforts to meet the employee's prima facie case. Because we agree that the district court incorrectly stated the standard applicable to a defendant's rebuttal case under Title VII, we vacate the order entered by the district court on February 26, 1979, and remand for further proceedings.[1]
 
 I.
 
 2
 Lila Jean Jackson began working for U. S. Steel in 1955 as a typist at the Research Laboratory in Monroeville, Pennsylvania. Over the years she rose to jobs with greater responsibility and in 1965 was appointed to a supervisory position. In 1970 she became the Supervisor of Secretarial Systems and Development. She performed her job well and was recommended for a promotion. As a result of a reorganization, however, Jackson's position was eliminated in April 1974. Jackson was informed that she had two options: (1) she could accept severance pay and leave U. S. Steel's employ entirely; or (2) she could elect "lay-off" status under which she would be eligible for recall for two years, but would be removed from the rolls without severance pay at the end of two years if she had not been recalled during that time. Jackson elected to accept severance pay. She informed U. S. Steel of her decision in mid-May. She began work for another employer on May 28, 1974. Three days later she signed her official severance request.
 
 
 3
 Believing that her termination constituted discrimination based on sex, Jackson filed a charge with the Equal Employment Opportunity Commission (EEOC) on April 24, 1974. The EEOC sent her a letter on December 30, 1976, notifying her of her right to sue. She promptly filed this suit in federal court. During her trial she attempted to prove her charge of sex discrimination by showing that no male supervisors had been eliminated in the 1974 reorganization and by showing that U. S. Steel made efforts to relocate male supervisors but made no effort to relocate her.[2] Judgment was entered in favor of U. S. Steel on the reorganization claim and in favor of Jackson on the relocation claim. This appeal followed.[3]
 
 
 4
 The parties to this suit agreed on very little. They did, however, agree that Jackson had received excellent job evaluations and merit increases in salary throughout her career with U. S. Steel, and that her qualifications and performance were not factors in the decision to eliminate her position (Stipulation of Facts, P 15; App. at 21a). Other matters were vigorously disputed. Jackson was told that there was an opening as a file clerk, a non-supervisory position with a substantially lower salary than she had commanded previously. The parties strongly disagree as to whether this job was ever offered to Jackson. Jackson contended that she was told that management did not want her to take this position: U. S. Steel claimed that Jackson refused to even consider the job. A few other non-supervisory positions at the Laboratory in Monroeville became available in April and May, but Jackson was not informed of these openings. U. S. Steel asserted that it did not offer these jobs to Jackson because she had said she was only interested in a secretarial position. Faced with conflicting testimony on these issues, the trial judge reviewed all the evidence and made a number of findings of fact. He found that in the April 1974 reorganization U. S. Steel eliminated only Jackson's job. He found that this elimination was not part of a substantial reduction in staff, and that Jackson's duties continued to be performed after she was terminated. He further found, however, that the elimination of Jackson's position resulted from changes made to improve work flow and efficiency, and that similar reorganizations of jobs involved with personnel functions occurred throughout U. S. Steel. Additionally, the trial judge found that U. S. Steel had a policy of assisting supervisors in obtaining other jobs if their positions were eliminated. Moreover, he found that this practice was not extended to Jackson when she was terminated in April 1974. With respect to this issue, he also found that Jackson did not flatly reject the file clerk position available in April 1974, and did not state that she was interested only in a secretarial position.
 
 
 5
 Jackson asserts that the district court erred in finding that the defendant's elimination of her position stemmed from a legitimate business reorganization. U. S. Steel also urges that the district court erred in making a number of its factual findings. We do not agree with either contention. In reviewing findings of fact, we are bound by the clearly erroneous standard. Rule 52(a), Fed.R.Civ.P. An appellate court is "circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence." Zenith Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). The question thus is not whether the appellate court would have made the same factual findings the trial court did, but whether "on the entire evidence (it) is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). With this standard in mind we have reviewed the record, and we cannot conclude that the findings of fact made by the district court are clearly erroneous.
 
 II.
 
 6
 Turning to the legal issues raised by this appeal, we note that U. S. Steel's liability in this case is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976). Title VII provides in pertinent part:
 
 
 7
 "It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex . . . ."
 
 
 8
 42 U.S.C. § 2000e-2(a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court considered the order and allocation of proof in actions challenging employment discrimination under Title VII. The Court stated:
 
 
 9
 "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination. . . . The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the (employer's action). . . . (If the employer's) reason . . . suffices to meet the prima facie case, . . . (the employee must) be afforded a fair opportunity to show that (the) stated reason . . . was in fact pretext."
 
 
 10
 Id. at 802-04, 93 S.Ct. at 1824-1825.
 
 
 11
 The McDonnell Douglas Court also said that a Title VII plaintiff could demonstrate a prima facie case of discrimination by proving the following:
 
 
 12
 "(i) that he belongs to a (group protected by the statute); (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."
 
 
 13
 Id. at 802, 93 S.Ct. at 1824. The elements specified above need not be present in every Title VII case, however. As the Supreme Court emphasized in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977):
 
 
 14
 "(T)he McDonnell Douglas pattern is (not) the only means of establishing a prima facie case of individual discrimination. Our decision in that case . . . did not purport to create an inflexible formulation. We expressly noted that '(t)he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from (a plaintiff) is not necessarily applicable in every respect to differing factual situations.' (411 U.S.) at 802 n. 13 (93 S.Ct. at 1824 n. 13.) The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act."
 
 
 15
 In Teamsters the Court noted that an inference of discriminatory action arises when an individual who has been denied employment demonstrates "that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." Id. at 358 n. 44, 97 S.Ct. at 1866. In a suit such as the one at hand, alleging discrimination in the termination of employment, the facts plaintiff must prove in order to establish a prima facie case will necessarily vary from those facts essential to a claim that the refusal to hire was discriminatory. Although the precise elements of proof specified in McDonnell Douglas and Teamsters will be inapposite, the plaintiff nonetheless must offer sufficient evidence to create an inference that the employer's action was based on impermissible reasons. As stated recently in Whack v. Peabody & Wind Engineering Company, 595 F.2d 190, 193 n. 11 (3d Cir. 1979), the Third Circuit "has not been overly demanding in the proof required for a prima facie case. Usually, however, some showing must be made that plaintiff was treated differently from similarly situated individuals of different racial groups" (citation omitted). This principle, of course, also applies when the alleged discrimination is based on sex.
 
 
 16
 With this standard to guide us, we have reviewed the evidence presented in this case with regard to Jackson's relocation claim. Our examination of the record reflects that Jackson, who belongs to a class protected by Title VII, produced evidence that she was qualified for the job she sought and that such a job was available.[4] After hearing conflicting testimony, the district court specifically found that Jackson had not rejected the one job mentioned to her,[5] and had been discouraged by U. S. Steel from seeking further employment at U. S. Steel.[6] The district court also found that U. S. Steel had a practice of "exert(ing) effort to relocate" supervisory personnel whose jobs had been eliminated by searching within the general area for other positions within the corporation, but failed to "expend . . . such effort" to relocate Jackson.[7] The testimony of Donald R. Patterson, Manager of Employment, that U. S. Steel generally attempted to help its employees find alternative jobs in the same vicinity,[8] provided support for this finding. It appears that the district court may have juxtaposed its finding that there were alternative jobs available in the area where Jackson lived which were not mentioned to Jackson with its finding that U. S. Steel made a practice of assisting employees in their efforts to find available alternative positions within the general area where the individuals were located, and concluded that this demonstrated disparate treatment in terms of efforts exerted to relocate employees.
 
 
 17
 On the other hand, the district court opinion also indicated that the trial judge placed great weight on the fact that Jackson was "the only supervisory employee who was not given available (U. S. Steel) employment alternatives when her position was terminated."[9] We consider this statement ambiguous. This statement may have been intended as a further comment on some of the evidence which supported Jackson's claim concerning the efforts exerted by U. S. Steel. Seen in this light, the fact that there were some suitable jobs available which were not offered to Jackson is evidence which bolsters Jackson's contention that U. S. Steel failed to exert effort on her behalf when her job was eliminated.
 
 
 18
 Alternatively, it is possible to interpret this statement as a finding that U. S. Steel was required to offer Jackson an alternative job because it had always offered other employees jobs. To the extent that this statement is premised on a finding that U. S. Steel always offered alternative positions to employees whose jobs were eliminated, the statement is unsupported by the record.[10] The possibility that the latter interpretation should be attributed to the ambiguous statement is strengthened by the fact that the district court emphasized that eight male employees were actually offered jobs while Jackson was not.[11]
 
 
 19
 In view of the apparent ambiguity in the district court opinion and of the importance of the order and allocation of proof in Title VII cases, we must remand this case for a more specific indication by the district court of the actual basis of its finding that Jackson established a prima facie case of discrimination.[12]
 
 III.
 
 20
 U. S. Steel's second argument on appeal is that the district court erred in its statement of the law regarding the burden placed on the employer once a Title VII plaintiff has set forth sufficient facts to constitute a prima facie case of discrimination. The opinion filed by the trial judge stated:
 
 
 21
 "In short, we believe USS has failed to prove by a preponderance of the evidence that legitimate, non-discriminatory reasons existed for the difference in treatment accorded Jackson and the exempt male employees at the Laboratory when their positions were eliminated."
 
 
 22
 App. at 52a. It was based on this failure of proof that the court concluded U. S. Steel was liable under Title VII for employment discrimination.
 
 
 23
 The legal standard enunciated by the district court is incorrect. It erroneously cast the burden of persuasion on the employer. In Title VII cases the burden of persuasion never shifts to the defendant. Rather, "the ultimate burden of persuading the factfinder that there has been illegal discrimination resides always with the plaintiff." Whack v. Peabody, 595 F.2d at 193. The burden imposed on the employer, after the complainant has made a prima facie showing of discrimination, is only the burden of producing evidence of legitimate, nondiscriminatory reasons. Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 296 n. 2, 58 L.Ed.2d 216 (1978).[13] In holding that U. S. Steel was required to "prove by a preponderance of the evidence" that U. S. Steel had acted for legitimate nondiscriminatory reasons, the district court improperly placed the burden of persuasion, as opposed to the burden of production of evidence, on the defendant. Because U. S. Steel did not have the benefit in this matter of the proper legal standard, we must vacate the judgment entered by the district court and remand the case for reconsideration.
 
 IV.
 
 24
 In sum, we conclude that the district court (1) did not err in finding that U. S. Steel eliminated Jackson's position as a result of a legitimate business reorganization, (2) did not clearly indicate the basis of its finding that Jackson had established her prima facie case of discrimination with regard to her relocation assistance claim, and (3) erred in imposing a heavier burden on U. S. Steel in meeting Jackson's prima facie case than is warranted. Accordingly, we vacate the judgment entered by the district court on February 26, 1979, and remand this case for reconsideration in light of this opinion.[14] Each party is to bear her or its costs.
 
 GARTH, Circuit Judge, dissenting:
 
 25
 I agree with the majority that the district court's judgment in this case cannot stand, for the district court incorrectly placed the burden of persuasion on United States Steel to rebut Jackson's prima facie case. However, I cannot agree with so much of the majority opinion which holds that the district court properly found that Jackson had established a prima facie case of discrimination in that the company had failed to assist her in finding alternate employment. Accordingly, I would reverse the judgment for Jackson outright, instead of remanding for reconsideration, leaving open the possibility of a new trial.
 
 
 26
 In the context of Jackson's claim that United States Steel discriminatorily failed to find an alternative position for her, the elements of a Title VII prima facie case are as follows:
 
 
 27
 (1) that Jackson belonged to a protected class (women),
 
 
 28
 (2) that she was qualified for and desired jobs that United States Steel might have had available,
 
 
 29
 (3) that despite her qualifications, United States Steel failed to look for alternative positions for her, and(4) that United States Steel did look for alternative positions for similarly situated males.
 
 
 30
 Cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (failure-to-hire case), quoted in Majority Op., supra, at 440; Scott v. University of Delaware, 601 F.2d 76, 80-81 & n. 3 (3d Cir. 1979) (discriminatory discharge case), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979).
 
 
 31
 I do not believe Jackson presented sufficient evidence to prove the fourth prong of the prima facie case. To be sure, the district court made findings of fact that this fourth prong was satisfied and that Jackson had established a prima facie case, App. at 34a-35a, 48a-49a, 51a, but unless those findings are based upon evidence, and I cannot find such evidence in the record, those findings must be set aside as clearly erroneous.
 
 
 32
 The district court's opinion demonstrates clearly that the court relied on statistics and comparisons of Jackson's treatment with various male employees over certain periods of time. Id. at 34a-35a, 48a-51a. Nowhere did the district court purport to rely, as suggested in Majority Op., supra, at 441, on the testimony of Donald R. Patterson, United States Steel's employment manager. Yet the majority interprets a statement by Patterson as an admission that United States Steel had a policy of placing terminated employees in alternative positions but failed to do so for Jackson. This mischaracterizes Patterson's testimony. Patterson testified as follows in response to questions asked him by the district court:
 
 
 33
 Q. When you have the elimination of a position of that kind, don't you have a policy of attempting to place people by some form of senority (sic )?
 
 
 34
 A. There is no form of senority (sic ) as far as the exempt and the non-union individuals are concerned. We do attempt to make placement if at all practical within the general area where the individuals are located.
 
 
 35
 Q. All right. What effort did you make here for placement of this girl who had been with the company for 19 years?
 
 
 36
 A. We were ready to attempt to place Mrs. Jackson on a job that would come available in the Pittsburgh office if she was interested in it.
 
 
 37
 Q. No, I am not talking about jobs that would become available. Did you make any effort, whatsoever to compare her availability and experience and so on with any positions that were then filled?
 
 
 38
 A. No, we did not.
 
 
 39
 App. at 176a-77a (emphasis supplied). Fairly read, Patterson merely recognized that some attempts at placement are made if practical, and "within the general area where the (particular) individuals are located," and that such assistance was available to Jackson. Nowhere did Patterson testify that United States Steel had a policy of canvassing all currently available openings whenever an employee was terminated. Nor did the district court apparently understand Patterson to have admitted that such a policy existed, since the district court asked only whether the company had tried to relocate Jackson in a position that was already occupied by someone else. Thus, I do not understand how the majority can hold that this ambiguous testimony satisfies and makes out a prima facie case.
 
 
 40
 An examination of the statistics and the district court's discussions of them reveals that they are woefully inadequate to support the inference that there was any company policy to assist males whose jobs were eliminated in finding alternative positions within the company. The district court, without any basis in logic or expert opinion testimony, arbitrarily and artificially selected as the relevant comparison group exempt supervisors, as opposed to all exempt employees; and as the relevant period 1973 to 1976, instead of the entire 1966 to 1978 period covered by the data submitted by Jackson. Moreover, the district court inconsistently cited two nonsupervisory employees' cases as examples of the company's policy. Finally, the district court's choice of "supervisors" as a general class to which Jackson could be said to belong does not comport with its finding respecting Jackson's claim of discrimination during her employment. The latter claim, which arose from her asserted lack of promotion, was denied. The district court found that she was uniquely qualified for her own position but no higher supervisory position or salary. Id. at 39a-46a. The district court's statistical approach violates a basic canon of statistical analysis that one should draw conclusions from data and not arrange that data post hoc to justify a particular result.
 
 
 41
 Because I believe that Jackson failed to present sufficient evidence to establish a prima facie case of discrimination with respect to United States Steel's failure to find her alternative employment, I would reverse the judgment of the district court outright and direct that judgment be entered for the defendant, United States Steel.[1] I therefore respectfully dissent from the remand prescribed by the majority opinion.
 
 
 
 [1]
 In addition to the appeals of U. S. Steel and Jackson on the issue of liability, Jackson appeals from the June 13, 1979, order determining the extent of relief to which she is entitled. Because of our resolution of the appeal on the liability question, we do not reach the issue of relief. We note, however, that if on remand liability is established on the same facts and the same claim, after reconsideration in light of the proper legal standard, the relief fashioned by the district court would appear to be appropriate. See n. 5 below
 
 
 [2]
 Jackson alleged she had been a victim of discrimination in salary and promotions, as well as in the elimination of her position. She sued under Title VII, 42 U.S.C. § 1985(3) (1976), and the Pennsylvania Human Rights Act, 43 P.S. § 955(a). Judgment was granted in favor of U. S. Steel on all claims other than her Title VII claim of discrimination with regard to her termination. She has not appealed from this adverse judgment
 
 
 [3]
 With regard to the reorganization claim, the trial judge ruled that Jackson had established a prima facie case of sex discrimination but that U. S. Steel had successfully rebutted the prima facie case by showing a legitimate, nondiscriminatory reason for its action. Although judgment was granted in favor of the defendant on this claim, U. S. Steel argues on appeal that Jackson failed to establish even a prima facie case of discrimination. In view of the fact that U. S. Steel prevailed on this claim, we need not address this issue
 
 
 [4]
 App. at 49a. It is undisputed that a few non-management jobs were available at the time Jackson's position was eliminated. U. S. Steel offers an explanation for why some jobs were not offered to Jackson, but that is part of its rebuttal case and properly should not be considered in analyzing whether the plaintiff has established a prima facie case
 
 
 [5]
 App. at 50a. Conflicting testimony was introduced on this issue, but the trial court found Jackson's evidence more credible
 
 
 [6]
 Id. Again, when faced with conflicting evidence, the trial court chose to believe Jackson
 
 
 [7]
 App. at 49a
 
 
 [8]
 "Q. When you have the elimination of a position of that kind, don't you have a policy of attempting to place people by some form of senority (sic )?
 "A. There is no form of senority (sic ) as far as the exempt and the non-union individuals are concerned. We do attempt to make placement if at all practical within the general area where the individuals are located."
 App. at 176a. We agree with the dissent, at page 16, that this testimony indicates that when jobs are eliminated U. S. Steel makes some attempts to place those employees in other jobs within the general area where the individuals are located. We do not interpret this testimony by Patterson as a statement that whenever one employee's job is eliminated U. S. Steel always reviews all its available job openings throughout the United States. Jackson's claim does not rest on the existence of a nation-wide relocation policy. Rather, it is focused on U. S. Steel's practice in the area where she worked for the previous 19 years. On the basis of the evidence she presented, the trial judge made factual findings that some non-management jobs were available in that area, but were not offered to Jackson.
 We further note that the defendant has not argued that Patterson misstated U. S. Steel's policy of offering relocation assistance within the same vicinity. Instead, U. S. Steel asserts that it has not always relocated employees, whether supervisory or nonsupervisory. Appellant's brief at 15-18. This assertion is discussed in note 10 below and in the text accompanying it.
 
 
 [9]
 App. at 51a
 
 
 [10]
 Plaintiff's exhibit 133 indicates that 78 employees elected severance pay from 1966-1977. While the exhibit is silent as to whether or not these employees actually received offers of alternative positions, it is possible to infer that they did not. The exhibit, however, gives no indication of whether any suitable alternative positions were available when the 78 jobs were eliminated, nor does it indicate whether U. S. Steel exerted any efforts to relocate the affected employees. Therefore, the exhibit does not, in itself, contradict a finding that U. S. Steel had a practice of exerting effort to relocate supervisory personnel. Nonetheless, this exhibit does provide evidence that U. S. Steel did not have a practice of actually offering positions to all employees whose jobs were eliminated. In view of this, we do not believe exhibit 133 supports a finding that U. S. Steel actually offered jobs to all employees whose jobs were eliminated
 We note that the evidence that U. S. Steel did not offer Jackson some employment alternatives which were available is evidence to support the district court finding that U. S. Steel did not exert any effort to relocate Jackson. This lack of effort expended contrasts with its admitted practice of exerting effort to relocate within the general area employees whose jobs have been eliminated. In the absence of evidence that there were jobs actually available when those 78 were terminated, the fact that U. S. Steel may have been unable to find and offer available jobs to 78 people does not contradict the admitted policy of U. S. Steel to exert effort to relocate employees (i. e., exhibit 133 may well indicate that U. S. Steel exerted efforts to relocate its employees, but was unsuccessful a large portion of the time).
 
 
 [11]
 App. at 50a
 
 
 [12]
 We take judicial notice of the fact that the trial judge who first heard this suit is now deceased. The trial judge to whom this case is assigned on remand will have the discretion to open the record to take additional testimony, to have a completely new trial, or to follow some alternate course
 
 
 [13]
 In Keene State the Supreme Court held that too heavy a burden had been imposed on a defendant who was required "to prove absence of discriminatory motive." 439 U.S. 24, 24, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). The Keene State Court distinguished between establishing a positive and a negative. The Court stressed that rather than proving the absence of discriminatory motive, a defendant need only introduce evidence of a legitimate, nondiscriminatory reason. Id. at 25, 99 S.Ct. at 295. Cf. Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978). We note that in the instant case the district court did not require U. S. Steel to prove the absence of any discriminatory motive
 
 
 [14]
 In the order of June 13, 1979, the trial court ruled that Jackson should be reinstated with back pay as a Job Class 4 employee. Jackson asserts that she should be reinstated with back pay at the higher Salary Grade 4 level, the salary level of her eliminated position. In making this argument, Jackson misapprehends the basis upon which she was granted relief. The district court found U. S. Steel liable to Jackson not because it eliminated her position in a reorganization, but because it failed to assist her in locating other openings. The trial judge found that at the time Jackson's position was eliminated there was one Job Class 4 opening. He also found that management knew of the opening and knew Jackson was qualified for it, but nevertheless did not make a bona fide offer of the position to Jackson. In order to "make (Jackson) whole for injuries suffered on account of unlawful employment discrimination," Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), the district court properly measured recovery by the position she should have been offered, rather than by the position which had been eliminated. Thus, we conclude that in light of the basis of liability in this case, the district court appropriately fashioned relief on the record before it. We make no comment on what result might follow if, using its discretion in view of this opinion, the district court should be confronted by a different record on remand
 
 
 [1]
 The majority opinion, recognizing the fact that the district court judge who initially heard this case has since died, suggests that there may be an alternative to the holding of a completely new trial. Majority Op., supra, at 442 n. 12. In view of the fact that credibility determinations will be required for the findings of fact made necessary by the majority opinion, I seriously question whether there is any alternative to a new trial. However, as the majority opinion points out, this will be a determination to be made by the district court in the first instance