541 F.Supp. 388 (1982)
Diane C. ERDMANN, Plaintiff,
v.
BOARD OF EDUCATION UNION COUNTY REGIONAL HIGH SCHOOL DISTRICT NO. 1, Donald Merachnik, individually and as County Superintendent of Regional High School District No. 1, and Charles Bauman, individually and as Assistant County Superintendent of Regional High School District No. 1, Defendants.
Civ. A. No. 81-2114.
United States District Court, D. New Jersey.
June 3, 1982.
*389 *390 Anthony P. D'Alessio, Abraham Borenstein, Springfield, N. J., for plaintiff.
Franz J. Skok, Johnston, Skok, Loughlin & Lane, Westfield, N. J., for defendants.

OPINION
WHIPPLE, Senior District Judge.
This matter is before the Court on defendants' motion for summary judgment as to various portions of the complaint.
*391 The facts relevant to this motion are summarized briefly as follows. The complaint charges that on five occasions plaintiff, Diane C. Erdmann, applied for various administrative positions within the Union County Board of Education Regional High School District No. 1, which employs her as a teacher. Plaintiff claims that although she was qualified for the positions, her applications were wrongfully rejected because of her gender, and that the vacancies were subsequently filled with male applicants. To be more specific, on August 3, 1974 plaintiff's application for the position of Athletic Director at Dayton Regional High School was rejected. Within the six month period between August of 1977 and the end of February, 1978, plaintiff applied to each of three regional high schools within the district for the newly created position of Director of Physical Education, Health, Driver Education and Athletics. Plaintiff was passed over for each of those jobs, apparently along with hundreds of other applicants. Lastly, in 1979 plaintiff applied to become Assistant Principal at Livingston Regional High School and was turned down on August 8, 1979.
On August 22, 1979 plaintiff filed charges with the E.E.O.C. and the New Jersey Division of Civil Rights alleging that the Board had discriminated against her illegally on the basis of her gender. Suit was instituted in this Court on July 7, 1981 following plaintiff's receipt of her Right to Sue notice from the E.E.O.C. In four separate counts, plaintiff alleges violations of the following statutory provisions: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New Jersey Law Against Discrimination, N.J.Stat.Ann. § 10:5-1, et seq.; and the New Jersey Law Against Discrimination by Educational Institutions, N.J. Stat.Ann. § 18A:6-6.
Defendants make three arguments in support of their current motion. First, with regard to the Title VII and New Jersey statutory claims, defendants argue that, except for plaintiff's claim relating to her application for assistant principal, all others are barred because of her failure to file charges within the statutorily prescribed time limits. Second, defendants contend that plaintiff's claim under Title 42 U.S.C. § 1983 must also be dismissed for failure to bring the claim within the period provided by the applicable statute of limitations, which defendants argue extends 180 days from the date of the allegedly discriminatory incident. Third, defendants Merachnik and Bauman argue that the complaint fails to state a claim against them upon which relief can be granted.

Title VII and The New Jersey Statutory Claims
Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., an individual complaining of discrimination who has filed charges with a state agency must also file charges with the EEOC within 300 days of the occurrence of the allegedly wrongful act. Here, the charge that plaintiff was discriminated against with respect to her application for assistant principal was timely filed. The remaining charges, however, fall outside of the 300 day filing period. Defendants, therefore, contend that these claims must be dismissed.
Plaintiff acknowledges that all of her charges were not timely filed; however, she invokes the doctrine of "continuing violations" as a basis for extending the jurisdictional reach of this Court. The theory of continuing violation is consistent with the traditionally liberal application of the congressionally mandated filing periods under Title VII. This judicially created exception to the statutory filing limitations was developed in order to provide aggrieved employees the maximum benefit of Title VII's civil rights protections, and has gained Congressional approval. 118 Cong.Rec. 7167 (1972). The Third Circuit has recognized application of continuing violation theory in Title VII cases. Bronze Shields Inc., et al. v. N. J. Dept. of Civil Service, et al., 667 F.2d 1074 (3d Cir. 1981); Masco v. United Airlines, 574 F.2d 1127 (3d Cir. 1978); Wetzel v. Liberty Mutual Insurance Co., 508 *392 F.2d 239, 246 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).
Despite the laudable aim served by continuing violation theory, its application is improper when an employee invokes it seeking to resurrect and litigate grievances long past by merely appending them to a current complaint. As noted by the Third Circuit in Bronze Shields, Inc., et al. v. N. J. Dept. of Civil Service, et al., supra,
The continuing violation theory, however, cannot be considered only in the expansive light of extending the filing period in order to protect a person's civil rights. Confronting and limiting the continuing violation theory is the explicit statutory ... limit, enacted by Congress.... [citations omitted.]
Id., at 1081-82. The circuit court in Bronze Shields relied principally upon Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), wherein the Supreme Court emphasized the congressional intent that an employer's liability for stale claims be limited. The Court stated:
The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-464 [95 S.Ct. 1716, 1721, 44 L.Ed.2d 295] (1975); see United Air Lines v. Evans, 431 U.S. 553, 558 [97 S.Ct. 1885, 1889, 52 L.Ed.2d 571] (1977).
Id., at 256-57, 101 S.Ct. at 503.
When confronted with a claim of continuing violation, in order to determine the timeliness of EEOC complaints the district court must "identify precisely the `unlawful employment practice' of which [plaintiff] complains," Bronze Shields, supra, at 1083, quoting Ricks, supra, at 257, 101 S.Ct. at 503. Repeated denials of employment or promotion to an individual applicant such as plaintiff do not constitute a continuing violation unless the denials were based upon some allegedly discriminatory practice, policy or procedure utilized by the employer in making its employment decisions, and the plaintiff has brought a timely complaint of a present violation based on the employer's use of that same practice, policy or procedure. As the Third Circuit recently stated:
To prevail on a continuing violation theory, however, the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's "standard operating procedure". Teamsters v. U.S., 431 U.S. 324 [97 S.Ct. 1843, 52 L.Ed.2d 396] ... (1977).
Jewett v. I.T.T. Corp., 653 F.2d 89, 91 (3d Cir. 1981).
For example, in Jurinko v. Edwin L. Wiegand Co., 477 F.2d 1038 (3d Cir. 1973), the plaintiffs, two women, alleged in their complaint that their employer maintained a policy against hiring married women into its production department. In that case only the last of three distinct actions involving the policy was filed within the statutory period; nonetheless, the Court had jurisdiction under continuing violation theory to adjudicate claims based on each of the three acts. Id. at 1042. See also, Masco v. United Airlines, 574 F.2d 1127 (3d Cir. 1978) (company policy of treating pregnancy leave differently from other disability leave); Clark v. Olinkraft, Inc., 556 F.2d 1219, 1221 (5th Cir. 1977) (plaintiff contended that "... her employer had an established policy or practice of promoting to better paying jobs over qualified women, men with less seniority."), Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 759 (9th Cir. 1980) ("... allegations included a sweeping attack on Lockheed's systems of promotion, compensation and training."); Kyriazi v. Western Elec. Co., 461 F.Supp. 894 (D.N.J. 1978) (class action alleging regular and systematic practice of discriminating against women in areas of, inter alia, hiring, promotion, transfer, benefits, and training.) A company policy against employing married women as stewardesses was involved in United Airlines v. Evans, 431 U.S. 553, 97 *393 S.Ct. 1885, 52 L.Ed.2d 571 (1976), although in that case plaintiffs had failed to make any timely complaint of United's use of the then abandoned discriminatory policy. The airline's use of a non-discriminatory seniority system upon rehiring the wrongfully terminated plaintiffs merely gave present effect to past wrongs, and therefore did not constitute a present instance of a continuing violation. Id. at 557, 97 S.Ct. at 1888. In Bronze Shields, supra, defendant's use of an eligibility roster compiled from the results of an allegedly discriminatory civil service examination was not a practice which constituted a continuing violation, since the roster itself was neutral in its effect. However, continued testing with the racially biased exam would have been a continuing violation.
The continuing violation theory can best be understood by reference to the practical consideration which justifies this expansion of the Title VII filing periods. Where the instances of employment discrimination charged all involve a particular company policy or practice, the past and otherwise stale claims may be litigated without need of delving into the specifics of each employment decision. The defendant employer is not burdened with the necessity of justifying each particular instance of alleged discrimination; but rather, may successfully defend against all the claims by justifying the practice challenged as a whole. The congressional intent that employers not be unreasonably burdened with preserving for years complete records of each and every employment decision is not frustrated when the continuing violation theory is held to its proper scope. Similarly, plaintiff employees can meet their burden of establishing the existence of a continuing violation without reference to the specific circumstances of particular incidents by showing with documents or testimony that the employer maintains a discriminatory policy or procedure, or perhaps by demonstrating statistically that a discriminatory practice is followed, see e.g., Davis v. Califano, 613 F.2d 957 (D.C.Cir. 1979).
That this practical consideration is in fact the central principle in continuing violation theory is reflected in those cases wherein the theory permits a plaintiff to challenge an identified continuing practice without even alleging that he or she is currently affected by it, see, e.g., Bartmess v. Drewrys USA, Inc., 444 F.2d 1186 (7th Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971) (female employee can properly challenge system whereby women were forced to retire earlier than men without herself retiring); Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) (practice of limiting women to certain jobs may be challenged at any time). In such cases no particular instance of discrimination is challenged, and the litigation necessarily focuses on the practice or policy itself. Accordingly, in order to withstand a motion for summary judgment as to untimely charges, a plaintiff must at a minimum identify the policy or practice upon which the claim of continuing violation is based and demonstrate at least some factual support for that claim.
Returning to the case at hand, plaintiff has failed to identify for the Court any continuing discriminatory policy or practice employed by defendants which would constitute a continuing violation and allow otherwise stale claims to be litigated in this cause. Plaintiff's complaint fails even to make the prerequisite allegation of such a policy or practice. Rather in opposition to this motion, plaintiff argues in her brief that the rejection of her numerous job applications evidences a continuing "pattern of discrimination." Plaintiff's Brief In Opposition, at 1. Although plaintiff's claims do fall into a consistent pattern of rejection, she has given no indication that the pattern has been generated by operation of any policy or practice used by defendants in making employment decisions, or that the pattern holds true with respect to female applicants in general. Even assuming that plaintiff's complaint or subsequent pleadings properly alleged a systematic practice of discrimination against women *394 with regard to employment in administrative positions, the evidence does not support such a conclusion. Defendants' answers to plaintiff's interrogatories indicate that women are hired or promoted into such positions with some regularity, and that since September of 1977 between 20 to 25% of all administrators employed by the Board have been women. If plaintiff has in fact been discriminated against, it has not been as a result of any systematically applied policy or informal practice of discrimination against women with respect to employment as administrators. Rather than focusing on the legality of a general policy or practice, the merits of plaintiff's claims must therefore necessarily turn upon the particular facts of each denial. As noted previously, Congress has chosen to relieve employers of the burden of defending against such claims unless they are filed within the statutorily allowed period.
Accordingly, with the exception of the claim relating to rejection of her application for assistant principal which was complained of in a timely manner, plaintiff's other claims under Title VII are time barred and must be dismissed. For the same reason plaintiff's state law claims under N.J.S.A. §§ 10:5-4 and 18A:6-6 must be dismissed, except the claim relating to the assistant principal position. Although New Jersey recognizes the continuing violation exception to its statutory 180 day filing period, Terry v. Mercer Co. Bd. of Chosen Freeholders, 173 N.J.Super. 249, 253, 414 A.2d 30 (App.Div.1980), as held with respect to plaintiff's federal claims, the exception is inapplicable to this case.
When a continuing violation is not established to bring untimely charges within the Court's present jurisdiction, the allegedly discriminatory acts which formed the bases of those charges may only,
... constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, [they are] merely ... unfortunate event[s] in history which [have] no present legal consequences.
United Airlines v. Evans, supra, at 558, 97 S.Ct. at 1889.

Claim Under 42 U.S.C. § 1983
Defendants contend that plaintiff's claim alleging violations of 42 U.S.C. § 1983 should be dismissed because it was not filed within the period of the applicable statute of limitations. Because Congress has not supplied § 1983 with its own statute of limitations, state limitations governing analogous actions are borrowed. Bd. of Regents of Univ. of St. of N.Y. v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980); Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972). Within the Third Circuit this borrowing is accomplished by looking beyond the cause of action alleged and seeking to characterize the facts underlying the plaintiff's claim in terms of traditional common law torts.[1]Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). See, e.g., Hughes v. Smith, 264 F.Supp. 767 (D.N.J.1967), aff'd, 389 F.2d 42 (3d Cir. 1968) (per curiam) (assault by police officer governed by limit on actions for injury to the person, N.J.S.A. 2A:14-2); Page v. Curtiss-Wright Corp., 332 F.Supp. 1060 (D.N.J.1971) (six year statute applied to breach of collective bargaining agreement, a contract, N.J.S.A. 2A:14-1). Accordingly, this Court must examine the nature of the conduct involved and match it to the most nearly analogous New Jersey statute of limitations. The parties offer three alternative statutes of limitation, which the Court treats separately as follows.
Defendants urge, albeit as an alternative position, that because the Board of Education is a "Public Entity" within the meaning of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., that Act's two year statutory period should apply, N.J.S.A. 59:8-8. Defendant relies upon Gipson v. Twp. of Bass River, 82 F.R.D. 122 (D.N.J. *395 1979), and Lloyd v. Stone Harbor, 179 N.J. Super. 496, 432 A.2d 572 (Ch.Div.1981).[2] Neither of these cases constitute strong support for defendants' position. At least one Court in this district has recently taken issue with the holding in Gipson. Peters v. Township of Hopewell, et al., 534 F.Supp. 1324 (D.N.J.1982). Citing Donovan v. Reinbold, 433 F.2d 738 (9th Cir. 1970), which the opinion in Gipson attempted to distinguish, J. Debevoise in Peters v. Twp. of Hopewell noted that a state's concept of its own sovereign immunity is essentially irrelevant to limitations under § 1983, since whether or not a state waives its sovereign immunity as New Jersey has by means of its Tort Claims Act, N.J.S.A. 59:1-2it is nonetheless subject to suit under § 1983. In addition, application of the Tort Claim Act's two year period would require that the Court look to the character of the entity engaged in the allegedly illegal conduct, rather than examining the nature of the conduct itself as required within the Third Circuit when borrowing a state statute of limitations under § 1983. The New Jersey courts have adopted the view that the state's Tort Claims Act is generally inapplicable to § 1983 actions. Woodsum v. Pemberton Twp., 172 N.J.Super. 489, 521, 412 A.2d 1064 (Law.Div.1980), aff'd, 177 N.J.Super. 639, 427 A.2d 615 (App.Div.1981). This Court is in agreement with the Peters opinion that this generalization extends also to the time provisions of the Act. Accordingly, the two year limitation will not be applied to plaintiff's claim under § 1983.
As between the two remaining statutory time limitations profferedsix years for actions sounding in contract, N.J. S.A. 2A:14-1, or, 180 days for actions alleging employment discrimination under N.J. S.A. 10:5-4, New Jersey's Law Against Discrimination, N.J.S.A. 10:5-18the choice turns on the characterization given to defendants' rejection of plaintiff's applications. If the rejections constitute failures to promote, then the six year contract statute applies. If the rejections are viewed as denials of employmenti.e., refusals to hire into positions not available by way of promotionthen the 180 day period is applicable. While the distinction between hiring and promotion is, in this instances, a subtle one, and its application yields a severe practical difference, this resolution is the only reasonable one left to the Court in this muddle of overlapping state and federal constitutional, statutory, and common law protections and concomitant limitations.
Implicit in the rulings of other courts is a finding that movement from a teaching position to an administrative one can be a promotion. See, e.g., Webster v. Redmond, 599 F.2d 793 (7th Cir. 1979); Lee v. Conecuh County Board of Education, 464 F.Supp. 333 (S.D.Ala.1979). However, whether administrative positions within the defendant's school system are available to teachers such as plaintiff as promotional opportunities, or whether, as defendants contend, teachers must apply for administrative jobs on the same basis as non-employee candidates, is a disputed issue of fact which cannot be resolved on the evidence presently before the Court.
In the event that plaintiff can substantiate her contention that defendants' actions were denials of promotion, then the applicable statute would be N.J.S.A. 2A:14-1, New Jersey's six year period for actions alleging breach of contract. If defendants have discriminatorily and illegally denied plaintiff promotion, then such actions would constitute breaches of the implied contractual provision that plaintiff's employer not act illegally with respect to obligations, such as appropriate promotion, within the employment relationship. In McNeil v. McDonough, 515 F.Supp. 113 (D.N.J.1980), aff'd., 648 F.2d 178 (3d Cir. 1981) (per curiam), the Court, applying New Jersey's six year statute of limitations to an action brought under Section 1981 which alleged that a failure to promote was racially motivated, stated:

*396 [T]he claim may be read as asserting that the employment relation, which is contractual in nature, is to be regarded as though it contained a provision that the employer would not act contrary to applicable law. Such a reading analogizes the claim as one for breach of contract, to which New Jersey's 6-year statute of limitations, N.J.S. 2A:14-1 would apply. That statute will be taken as governing all claims encompassed by 42 U.S.C. § 1981, et seq., as well as claims said to arise directly under the U.S. Constitution in respect to which the same underlying considerations apply.
Id. at 120. Similarly, in Kyriazi v. Western Electric Co., 461 F.Supp. 894 (D.N.J.1978), the Court held that plaintiff's action under 42 U.S.C. § 1985(3), for alleged conspiracy to discriminate against plaintiff due to her sex was governed by New Jersey's statute of limitations on contract actions. See also, Liotta v. National Forge Co., 629 F.2d 903 (3d Cir. 1980) cert. den., 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); Davis v. U.S. Steel Supply, 581 F.2d 335, 336 (3d Cir. 1978); Page v. Curtis-Wright Corp., supra, at 1065.
This same employment contract rational cannot apply in the event that defendants' actions are determined to be refusals to hire. If plaintiff did not enjoy opportunity to attain administrative positions via promotion and was on the same footing as non-employee applicants, then defendants owed her no duty with respect to those jobs in the context of the parties' contractual employment relationship. The six year statute would not apply, and the most analogous limitation would be the 180 day period under N.J.S.A. 10:5-18. As defendants note, the cases cited in support of borrowing the six year statute all involve the breach of duties owed to employees under existing employment contracts, whether written or "at will." It would be inconsistent and contrary to this Circuit's method of choosing the state limitation to be borrowed, see pp. 394-395 supra, if this Court were to focus on the character of the plaintiff involvedi.e., employee versus non-employeerather than on the nature of the defendants' actions underlying the causei.e., failure to promote versus refusal to hire. Accordingly, the 180 day period should apply if defendants' decisions on plaintiff's applications were hiring rejections. Similar attenuated state limitations have been borrowed in § 1983 and § 1981 cases by courts in other circuits, even in situations where the employment contract view would be appropriate. See Burns v. Sullivan, 619 F.2d 99 (1st Cir.), cert. denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); McGill v. Gen. Elec. Co., 524 F.Supp. 1126 (D.Md.1981).[3]
One New Jersey state court has addressed precisely the issue of whether or not the 180 day limit may appropriately be borrowed in a § 1983 action. Lloyd v. Stone Harbor, 179 N.J.Super. 496, 432 A.2d 572 (Ch.Div.1981). The state court held that it could not. In that case plaintiff, an employee of the municipal police department, applied for a job as a regular police officer, a position apparently not available through promotion. The issue of statute of limitations arose with respect to direct federal constitutional claims. The Court properly analogized to limitations decisions under § 1983. The state court relied upon Gipson v. Bass River, supra, (discussed at pp. 394-395 supra), with which this Court disagrees, in finding the two year Tort Claims Act limitation applicable against a municipality and the six year contract appropriate as against individual defendants. The state *397 court rejected the possibility of borrowing the 180 day Law Against Discrimination period. The court stated:
This provision would be most appropriate for application here were it not for the language of § 27 of the law [10:5-27] which provides that it shall not `bar, exclude, or otherwise affect any right of action, civil or criminal, which may exist independently' of that law. If the 180 day condition is applied here, it will `bar, exclude, or otherwise affect' the constitutional suit of plaintiff.
179 N.J.Super., at 514, 432 A.2d 572 (emphasis supplied). Although this rational reflects laudable deference to plaintiff's federal civil rights, it proves too much. As noted earlier (supra, at p. 394), appropriate state limitations are borrowed to fill the void left by Congress when enacting § 1983. Thus, though plaintiff's rights under § 1983 are affected by application of the 180 day period, it is with the tacit approval of Congress. The Court is borrowing only the statute of limitations, which the Court in Lloyd agreed is a "most appropriate" limitation. The Court is not seizing upon New Jersey Law Against Discrimination as a limitation or bar to similar federal remedies, but rather is adopting the analogous state time limit, as it must, to define one parameter of the federal § 1983 cause of action. N.J.S.A. 10:5-27 does not prevent the borrowing of § 10:5-18.
Accordingly, the 180 day limit will apply in the event that later proofs demonstrate defendants' actions to be refusals to hire. Defendants' motion for dismissal of plaintiff's claim under § 1983 is denied without prejudice pending resolution of the dispositive factual issue.

Failure to State A Claim as to Certain Defendants
Finally, plaintiff's claims against defendants Merachnik and Bauman will not be dismissed at this time. Although defendants correctly point out that in deposition testimony plaintiff was unable to explain how Dr. Merachnik and Mr. Bauman discriminated against her, plaintiff has established that these two individuals occupy influential positions within the school district. Plaintiff should therefore be allowed to complete the discovery process to determine what role, if any, these individuals played in making appointments.
Counsel for defendants shall submit an order in conformance with this opinion within five (5) days.
NOTES
[1] This method of selecting the appropriate state statute of limitations has not been consistently followed in other Circuits. See, e.g., Beard v. Robinson, 563 F.2d 331, 336-37 (7th Cir. 1977), cert. den., 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978).
[2] The Court in Lloyd v. Stone Harbor, supra, relied entirely upon Gipson v. Twp. of Bass River, supra, and did not consider the argument which supports this decision. For further discussion of Lloyd, see pp. 396-397 infra.
[3] Plaintiff cites a number of cases from other jurisdictions wherein filing periods prescribed in state fair employment statutes similar to N.J.S.A. 10:5-1 et seq. have been rejected as appropriate limitations under § 1983. See Zuniga v. AMFAC Foods, 580 F.2d 380, n.5 at 384 (10th Cir. 1978); Chambers v. Omaha Public School Dist., 536 F.2d 222, 226 (8th Cir. 1976); Garner v. Stephens, 460 F.2d 1144, 1147-48 (6th Cir. 1972). In each of these cases, however, the limitations were rejected because the statutes to which they apply provide only administrative remedies, and do not ground judicial causes of action. In contrast, N.J.S.A. 10:5-13 provides for a private judicial cause of action under the N.J. Law Against Discrimination.