**Judith A. PORTA, Plaintiff,**

v.

**ROLLINS ENVIRONMENTAL SERVICES (NJ), INC., Donald C. Matter, Donald Hawkey, Glendon J. Spears, Defendants.**

Civ. A. 85–4934.

United States District Court, D. New Jersey.

March 6, 1987.

Isacoff & Iannelli by Emil L. Iannelli, Frances A. Fruhwirth, Southampton, Pa., and Rappoport & Rosenberg by Paul Rosenberg, Trenton, N.J., for plaintiff.

Brown & Connery by John Mulderig, Westmont, N.J., and Ashby, McKelvie and Geddes by Roderick R. McKelvie, Wilmington, Del., for defendants.

## OPINION

COHEN, Senior District Judge:

This civil rights action instituted by plaintiff, Judith A. Porta, against her former employer Rollins Environmental Services (NJ), Inc. ("Rollins") and its employees Donald C. Matter, Donald Hawkey and Glendon J. Spears is before the Court on a summary judgment motion by defendants. For the reasons that follow, the motion is denied.

Plaintiff alleges that Rollins violated several provisions of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* She also asserts pendent state law claims, alleging breach of contract, intentional infliction of emotional distress, and violations of the New Jersey Law against Discrimination, N.J.S.A. 10:5–12. She seeks back pay with interest, lost employment benefits, punitive damages and attorneys' fees and costs.

Plaintiff was employed by Rollins at its Bridgeport, New Jersey facility from May of 1980 to June of 1984, when her employment was terminated. In August of 1984 she filed a complaint with the Equal Employment Opportunity Commission

("EEOC"), received a right-to-sue letter in July of 1985, and filed this action on October 15, 1985.

Plaintiff was hired by Rollins to serve as a shift supervisor, and she was the facility's first female managerial employee. She alleges a series of discriminatory acts, which we will briefly outline here. She asserts that throughout her employment discriminatory statements were made by defendants Hawkey, an engineer at the plant, and Spears, the supervisor of operations. Plaintiff alleges that Spears said he would never have hired a woman as a shift supervisor, and that both Hawkey and Spears made statements such as "What do you know, you're a woman" throughout her tenure.

Several weeks after she began work, she received seven or eight threatening and sexually offensive, anonymous handwritten notes in her mailbox at the plant. She brought them to the attention of Maurice Hunt, then a vice-president of Rollins, who ordered that access to the mailboxes be restricted. Plaintiff claims that despite this order, she received one or two more notes, and that she had no idea who was sending the notes.

Then, on Christmas Day, 1981, plaintiff alleges that she was "set up" by defendant Spears, who allegedly left her in charge of a waste disposal operation without adequate staff, and that she had to shut down this operation as a result. Plaintiff maintains that Spears deliberately put her in this difficult position because of her sex.

In December 1982, plaintiff was temporarily serving as acting Health and Safety Supervisor. She applied for assignment to that position on a permanent basis but was rejected, she was told, because she did not hold an industrial hygenist certificate. The male employee who was subsequently promoted to this position also did not have such a certificate, but was permitted to obtain this certification after his assignment. Plaintiff was not given that option, and alleges that she was denied the position because she was a woman.

In February 1983, while plaintiff was working as a shift relief supervisor, defendants Spears and Hawkey allegedly called her four times from the company lunchroom, where she was eating, to a pump repair station at the other end of the plant. She claims they called her to issue permits they were authorized to issue themselves, and found it "funny" that she had to keep walking back and forth the length of a football field between the repair area and the lunchroom.

On October 30, 1983, in an exchange concerning the suitability and safety of certain scaffolding, defendant Hawkey made a remark to the effect that plaintiff could not fall through an opening between the scaffolding and a vessel because her "tits were too big." Plaintiff had inspected the opening and had stated that it did not meet relevant safety standards. She complained about this incident to Hunt, who counseled Hawkey to be more careful about making such comments.

The next incident occurred in January, 1984, when plaintiff alleges that she noticed some crude graffiti saying "Judy sucks Bernie's dick" on a refrigerator in a staff lounge. She maintains that no one cleaned the graffiti for a week, until she instructed a janitor to remove it. She reported the incident to defendant Donald Matter, Rollins' Vice-President of Operations, who issued a memo about defacing company property but which did not address the issue of sexual harassment.

The final incident plaintiff complains of is her termination. In February, 1984, she was selected for the newly created position of Staff Assistant for Operations. Her job description was detailed in a memorandum prepared by defendant Spears. One of the duties listed was to

Cover, as necessary, the positions of Transportation Supervisor and Supervisor of Safety & Health. It should be understood that in an *emergency,* the Shift Supervisor's position will also be covered, but it must be an *urgent need.* The two positions covered and responsi-

bilities must be discussed. (emphasis added).

In May of 1984, one of Rollins' four shift supervisors was transferred to another division, and another was discharged, leaving only two shift supervisors to cover the round-the-clock operations of the plant. These two were each working 12 hours a day, seven days a week. In June, 1984, defendant Matter ordered plaintiff to work as a shift supervisor on a rotating shift. She denied that the situation constituted an "urgent need," as required by her job description and as that term had been explained to her. She said that even though she was not required to assist, she would be willing to work as a shift supervisor from 8:00 A.M. to 4:00 P.M. Monday through Friday. Plaintiff claims that she wanted to avoid working nights and weekends because defendant Spears would often come in inebriated at those times, and that she wished to avoid further sexual harassment from him. When she refused to work any nights or weekends as a shift supervisor, she was discharged, on June 15, 1984.

Plaintiff seeks relief under several provisions of Title VII: she asserts that she was subjected to a hostile and offensive work environment, that Rollins' failure to promote her amounted to unlawful disparate treatment, and that she was discharged in retaliation for her lawful opposition to harassment. Before we can address the merits of those claims, we must deal with some preliminary issues about the timeliness of plaintiff's complaint.

## I. Failure to Exhaust State Administrative Remedies

■ One preliminary problem relates to the Title VII requirement that a claimant exhaust state administrative remedies before proceeding under federal law. Section 2000e–5(c) of Title 42 provides:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law ...

"The essence of this provision is that an individual who has allegedly suffered discrimination in employment should first seek relief from the appropriate state discrimination agency, if one exists, before the EEOC becomes involved." *Toombs v. Greer-Smyrna, Inc.*, 529 F.Supp. 497, 499 (M.D.Tenn.1982), *aff'd*, 709 F.2d 1509 (6th Cir.1983). The EEOC must defer any action for sixty days after the filing of a charge with the state agency or until that agency completes its investigation, whichever comes first. *Id.*

In this case there was a state agency to which plaintiff's claims could have been addressed, i.e. the New Jersey Division on Civil Rights, which is charged with enforcing the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–12. Plaintiff did not file a complaint with that agency. She did testify that she called "the State of New Jersey" and that they advised she file the claim with the EEOC. She then filed a complaint with the EEOC, and never participated in any state investigation. *See* Porta deposition at 51–52. She did not retain counsel until several months after her initial contact with the EEOC.

Many laymen who are complaining about discrimination fail to file with the relevant state agency. To protect these individuals, the Supreme Court held in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) that the EEOC can refer a charge back to the appropriate state agency and wait until the deferral period passes before taking action. Federal regu-

lations now require the EEOC to follow this referral/deferral process whenever an individual files his or her initial complaint with the EEOC. *See* 29 C.F.R. § 1601.13 (1986).

The issue of plaintiff's failure to exhaust her state remedies was not raised by the defendants, nor does plaintiff's complaint in this Court state that she has satisfied that prerequisite. It is unclear whether, in fact, the EEOC ever did make the required referral to the New Jersey Division on Civil Rights. Plaintiff testified at her deposition that she was unaware of any such referral, and the documentation before this Court is similarly lacking in any indication that the EEOC made this referral.

If the EEOC did in fact make the referral, then there is no problem with 42 U.S.C. § 2000e-5(c) and its exhaustion requirement, since more than 180 days passed between the filing of plaintiff's EEOC charge and the issuance of the right-to-sue letter, *see* 42 U.S.C. § 2000e-5(f), certainly enough time to encompass the 60 day deferral period. If the EEOC did *not* make the referral, we are reluctant to penalize plaintiff for this error. The Supreme Court in *Love v. Pullman Co., supra,* discouraged the imposition of strict technical requirements "in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." 404 U.S. at 527, 92 S.Ct. at 619. The EEOC's violation of its own regulations should not "redound to [plaintiff's] detriment," *Roberts v. Arizona Bd. of Regents,* 661 F.2d 796, 799 (9th Cir.1981), especially when, as here, she has not engaged in any "dilatory tactics," *White v. Dallas Indep. School Dist.,* 581 F.2d 556, 563 (5th Cir.1978).

■ In *Cannon v. State of Del.,* 523 F.Supp. 341 (D.Del.1981), the Court was faced with a similar problem of a plaintiff who failed to exhaust her state remedies. There, the Court retained jurisdiction over the case but granted plaintiff time to file the necessary state claim. That avenue is not available to us in the present case, since the 180 day statute of limitations for filing claims with the New Jersey Division

on Civil Rights, *See* N.J.S.A. § 10:5-18, has long passed. The exhaustion requirement is not absolute, and failure to satisfy its exact requirements does not deprive us of jurisdiction over plaintiff's claim, *see Douglas v. Red Carpet Corp.,* 538 F.Supp. 1135, 1138 (E.D.Pa.1982), nor would any such dismissal be equitable.

## II. Continuing Violation

Plaintiff filed a timely complaint with the EEOC only with respect to her discharge and not with respect to the other allegedly discriminatory acts. *See* 42 U.S.C. § 2000e-5(e). Defendants argue that her complaints about these other acts are therefore time-barred.

Plaintiff maintains that, despite her failure to comply with the statute of limitations, she can complain about these earlier acts because Rollins was guilty of a "continuing violation" of Title VII. Under this exception to the statutory filing limitations, a plaintiff can complain of a series of employer actions conducted pursuant to a policy or practice of discrimination as long as she files a timely complaint as to one of those actions. *See Bronze Shields Inc. v. N.J. Dept. of Civil Service,* 667 F.2d 1074 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982); *Erdmann v. Bd. of Educ. Union City Reg. High School,* 541 F.Supp. 388 (D.N.J.1982).

■ To evaluate plaintiff's claim of a continuing violation, we must "identify precisely the 'unlawful employment practice' of which [plaintiff] complains" *Bronze Shields, supra* at 1083, quoting *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). The plaintiff must do more than show the occurrence of "isolated or sporadic acts of intentional discrimination." The plaintiff's ultimate burden is to show by a preponderance of the evidence some form of intentional discrimination to be company policy or procedure. *See Jewett v. Int'l Tel. and Tel. Corp.,* 653 F.2d 89 (3d Cir.1981). For summary judgment purposes, she must at least identify the policy or practice upon which she bases the claim of continuing

violation and show some factual support for her claim. *Erdmann, supra* at 393.

■ Plaintiff alleges that Rollins had a policy of discriminating against her because she was a woman. She was the only female employee at her level, and so she cannot present evidence of how other women in managerial positions were treated. Plaintiff asserts that she was subjected to a series of discriminatory comments and actions throughout the term of her employment. We find that there is "some evidence," *Erdmann, supra,* to support this claim. *Compare Erdmann, supra,* where such evidence was found lacking. Sexual innuendos and ongoing disparate treatment based on sex have been found to constitute a continuing violation. *See Held v. Gulf Oil Co.,* 684 F.2d 427 (6th Cir.1982). Even though the discharge in the instant case was the only event occurring within the statutory time for filing actions, the other instances are not isolated and unrelated events, but may have been part of a company policy of discrimination. These prior events were all "reasonably related," *see Cuffy v. Getty Refining & Marketing Co.,* 648 F.Supp. 802, 810 (D.Del.1986) and may thus be part of a continuing violation.

### III. Hostile or Offensive Work Environment

■ As we evaluate the merits of the Title VII claims, we are cognizant of the current procedural posture of the case, namely that defendants have moved for summary judgment. We must deny this motion if plaintiff has established the essential elements of her case, such that a jury could return a verdict for her under the relevant law, *see Bushman v. Halm,* 798 F.2d 651, 657 (3d Cir.1986). Only if there are no genuine issues of material fact and defendants are clearly entitled to judgment as a matter of law can we grant the motion. "[T]he factual disputes involved in most Title VII suits preclude their resolution on summary judgment," *McKenzie v. Sawyer,* 684 F.2d 62, 67 (D.C.Cir.1982), and the present case is no exception.

■ In Count I of her complaint, plaintiff charges that Rollins violated Title VII by creating a hostile or offensive work environment for her. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is actionable under Title VII if it is sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment," *Meritor Savings Bank, FSB v. Vinson,* —— U.S. ——, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986), quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982). The plaintiff must show that she would not have been subject to this harassment "but for" her sex, *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 620 (6th Cir.1986).

From the evidence developed thus far, a jury could find that plaintiff was subjected to unwelcome "harassment" (as defined in *Vinson, supra,*) on the basis of her sex. She allegedly was subjected to crude comments and humiliating treatment and was told by Spears that her opinion was not respected because she was a woman, all of which continued in various forms and could be found to create "a hostile or offensive environment". *See* EEOC Guidelines, 29 C.F.R. § 1604.11(a).

### IV. Disparate Treatment

■ The Complaint also alleges disparate treatment relative to Rollins' failure to hire plaintiff as the permanent supervisor of Health and Safety. Plaintiff argues that the sole reason given by her employer for not giving her the position was her failure to have a certification which the candidate they did hire also lacked, but was allowed to obtain after assuming the job. Plaintiff must show that Rollins' failure to promote her was motivated by a discriminatory intent. *See Wilmore v. City of Wilmington,* 699 F.2d 667 (3d Cir.1983). The Supreme Court has articulated the relevant

burdens of proof for maintaining a disparate treatment case in its opinions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff bears the initial burden of showing by the preponderance of the evidence a prima facie case of discrimination. The burden then shifts to the defendant to articulate some legitimate non-discriminatory reason for the adverse action. The burden *then* shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not true reasons, but merely a pretext for discrimination. *Payne v. Heckler*, 604 F.Supp. 334 (E.D.Pa.1985). The plaintiff can meet this last burden either directly, by showing that a discriminatory reason was the more likely motivation behind the employer's action, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Thus, we begin by analyzing whether plaintiff has met her initial burden of showing a prima facie case of discrimination. There are four elements to the prima facie case in the context of an alleged discriminatory hiring: (1) plaintiff belongs to a statutorily protected group; (2) plaintiff was qualified for the job for which she applied; (3) plaintiff was not selected for that position; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons with plaintiff's qualifications. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. This test, while initially articulated in a failure to hire case, has been adopted for use in promotion cases. *See Meyer v. Missouri State Highway Commission*, 567 F.2d 804, 808 (8th Cir.1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978).

■ Here, plaintiff has established the prima facie case. Elements one and three are clearly met. Element two is also met, since the man who was chosen for the position had the same qualifications as plaintiff. The fourth element is also met, since the evidence shows that not only did the employer continue to take applicants with plaintiff's qualifications after rejecting her, but the man who was hired lacked the certification plaintiff lacked and which was the purported reason for her rejection.

■ After plaintiff establishes the prima facie case, the burden then shifts to the defendants to allege a legitimate reason for the action. Rollins asserts that it did not make its decision because of plaintiff's sex, but it does not suggest any *other* reason for the decision in its briefs. Defendants have therefore not met their burden on this issue and we deny summary judgment on this point.

## V. Retaliatory Discharge

■ Plaintiff alleges that she was discharged in unlawful retaliation for her reluctance to submit to the alleged offensive, hostile and intimidating work environment. Count II of Complaint. Retaliatory discharges are governed by § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), which provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter.

In order to prevail on an action pursuant to this section, the plaintiff must establish three elements. First, she must show that she engaged in some statutorily protected opposition to discrimination; second, that there was some adverse employment action; and finally, that there was a causal connection between her opposition and the adverse employment action. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). *See generally* B. Schlei & P. Grossman, *Employment Dis-*

*crimination Law* 533, 534 (2d ed. 1983); *Bimbo v. Burdette Tomlin Memorial Hospital,* 644 F.Supp. 1033, 1036 (D.N.J.1986).

■ The first element that plaintiff is required to establish is that she engaged in statutorily protected opposition to discrimination. The determination of what statutorily protected opposition consists of must be made by looking at the facts of the particular case. *See Monteiro v. Poole Silver Co.,* 615 F.2d 4 (1st Cir.1980); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222 (1st Cir. 1976). In *Hochstadt,* the court discussed self-help activities of employees as particular types of on-the-job opposition to alleged discrimination. In its analysis the court stated:

> [W]e think courts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing sexual discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel ... The standard can be little more definitive than the rule of reason applied by a judge or other tribunal to given facts. The requirements of the job and the tolerable limits of conduct in a particular setting must be explored.

*Hochstadt supra* at 231 (footnote omitted). It is accepted that an action for retaliatory discharge under 42 U.S.C. § 2000e–3(a) will lie when an employee has been discharged for filing complaints in good faith before federal and state agencies, *Hochstadt supra* at 231. It is also accepted that actions for retaliatory discharge will not be successful where allegations of employer misconduct are obviously raised as a "smokescreen in challenge to the supervisor's legitimate criticism," rather than voiced in good faith opposition to perceived employer misconduct, *Monteiro supra* at 8.

■ It is less clear to what extent the opposition of plaintiff—refusal to work a certain shift because Spears would be there—is protected. The issue is clouded by a complicated set of facts and differing interpretations by the parties of what actually transpired. Accordingly, plaintiff's actions must be viewed in context of the case as a whole, and may not be found to lack statutory protection as a matter of law.

No further review of the remaining two elements of retaliatory discharge is necessary as defendants' motion for summary judgment on this count is denied based on the factual dispute with regard to the first element. We note, however, that there is also a factual dispute regarding the third element, the existence of a causal connection between the opposition and the discharge.

## VI. State Law Claims

### A. Breach of Contract

■ Plaintiff contends that Rollins' termination of her employment violated her employment contract. She urges that the Rollins "Personal Conduct Code" ("Code"), a one-page document listing prohibited acts and sanctions for engaging in such conduct, constituted a part of her contract. She argues that, because the contract lists specific acts that could result in discharge, there is an implied promise that employees will only be discharged for good cause, *see Woolley v. Hoffman-LaRoche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), and that there was no good cause to justify firing her.

One of the prohibited acts listed in the Code is "Insubordination," and defendants argue that plaintiff's refusal to work nights and weekends constituted insubordination, which justified firing her. Defendants claim that plaintiff's job description required her to work these shifts in an emergency, and that such an emergency was present. Defendants also deny that the Code constituted part of the employment contract. Plaintiff disputes this interpretation of the job description, and denies she was guilty of insubordination. A factual dispute exists over whether the Code constituted part of the employment contract, and if so, whether that contract

was violated. We thus deny summary judgment as to this claim.

### B. State Law Against Discrimination

 Plaintiff alleges that Rollins' actions violated the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–12. New Jersey Courts have adopted federal law standards in evaluating many actions under the New Jersey statute. *See Peper v. Princeton Univ. Bd. of Trustees,* 77 N.J. 55, 389 A.2d 465 (1978); *Goodman v. London Metals Exchange, Inc.,* 86 N.J. 19, 429 A.2d 341 (1981) (both stating that New Jersey will follow *McDonnell Douglas* in evaluating disparate treatment cases); *see also Roberts v. Keansburg Bd. of Educ.,* 5 N.J.A.R. 208, 246 (1983) (New Jersey Law Against Discrimination embraces the theory of a sexually offensive or hostile work environment).

Therefore, since we deny the motion for summary judgment as to the Title VII claims, we deny summary judgment as to this state claim.

### C. Intentional Infliction of Emotional Distress

 Plaintiff charges that her discharge was intentionally undertaken to cause her emotional distress. New Jersey has adopted the standard of the Restatement of Torts, 2d, § 46 to govern a cause of action for intentional infliction of emotional distress. *See Hume v. Bayer,* 178 N.J.Super. 310, 315, 428 A.2d 966 (1981). Under New Jersey law, liability is imposed for this tort "where the conduct exceeded all bounds usually tolerated by decent society and where the actions are especially calculated to cause and do cause mental distress of a very serious kind." *Id.* Other courts have found a substantial issue of fact as to whether an employer's allegedly harassing conduct constituted intentional infliction of emotional distress. *See Cory v. Smithkline Beckman Corp.,* 585 F.Supp. 871 (E.D.Pa.1984); *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497 (11th Cir.1985). There is also a factual dispute here, so we deny summary judgment. An appropriate order will be entered.